868

UNITED STATES GRAPHITE CO. v.
SAWYER, Secretary of Commerce.

No. 9680.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 7, 1948.

Decided Feb. 28, 1949.

Rehearing Denied Oct. 13, 1949.

Mr. J. Marvin Haynes, of Washington, D. C., with whom Messrs. W. C. Magathan and F. Eberhart Haynes, both of Washington, D. C., were on the brief, for appellant.

Mr. Edward H. Hickey, Special Assistant to the Attorney General, with whom Messrs. George Morris Fay, United States Attorney, and Richard E. Guggenheim, Attorney, Department of Justice, were on the brief, for appellee. Mr. Herbert A. Bergson, Acting Assistant Attorney General, of Washington, D. C., also entered an appearance for appellee.

Before EDGERTON, CLARK, and WILBUR K. MILLER, Circuit Judges.

PER CURIAM.

The judgment is affirmed on the opinion of Judge Pine in the District Court. United States Graphite Co. v. Harriman, D. C., 71 F.Supp. 944.

WILBUR K. MILLER, Circuit Judge (dissenting).

As my brethren have approved and adopted the District Court's opinion without reproducing it, I shall restate the case before giving the reasons for my dissent.

In an effort to induce private enterprise to use its own funds in expanding manufacturing facilities to meet the requirements of national defense, the Congress enacted in 1940 § 124 of the Internal Revenue Code.[1] Subsection (a) thereof is in part as follows:

"Every person, at his election, shall be entitled to a deduction with respect to the amortization of the adjusted basis (for determining gain) of any emergency facility (as defined in subsection (e)), based on a period of sixty months. * * *"

This is unequivocal and imperative language and is a grant of a right to the deduction described. If a later provision of § 124 is to be held to have modified a taxpayer's absolute right to the five-year amortization described in subsection (a) by giving to an administrative agency authority to restrict the amortization to something less than the entire cost, I take it that the intention of Congress to do so should be. expressed in clear and unmistakable terms.

An emergency facility was defined by subsection (e) as one (a) which had been constructed or acquired after December 31, 1939, and (b) which had been certified by the proper authority as necessary in the interest of national defense.[2]

The appellant is a manufacturer of a graphite product known as "graphitar." In 1943 when the government required for war purposes greater quantities of graphitar than appellant could produce, the War Department insisted that it double its capa-

[1] 26 U.S.C.A. § 124.

[2] The pertinent portion of subsection (e) is as follows:

"(1) Emergency facility. As used in this section, the term 'emergency facility' means any facility, land, building, machinery, or equipment, or part thereof, the construction, reconstruction, erection, installation, or acquisition of which was completed after December 31, 1939, and with respect to which a certificate under subsection (f) has been made. For the purposes of this section, the part of any facility which was constructed, reconstructed, erected, or installed by any person after December 31, 1939, and not earlier than six months prior to the filing of an application for a certificate under subsection (f), and with respect to which part a certificate under subsection (f) has been made, shall be deemed to be an emergency facility, notwithstanding that the other part of such facility was constructed, reconstructed, erected, or installed earlier than six months prior to the filing of such application. For the purposes of this section, the part of any facility which was constructed, reconstructed, erected, or installed by a corporation after December 31, 1939, and

city by erecting a new building and installing therein the necessary machinery and equipment.

Relying—naively, as it turned out—on the provisions of § 124 of the Internal Revenue Code, the appellant erected the building and began the acquisition of machinery and equipment. With respect to the building, the appellant applied on June 27, 1943, for a necessity certificate under subsection (f) (1) of § 124, and received it from the Secretary of War on October 28, 1943. The entire cost of the building could therefore be amortized for tax purposes in the statutory five-year period. But with the acquisition of machinery, the appellant's troubles began. On May 29, 1944, and within six months after the installation of certain machinery and equipment, appellant applied for a covering necessity certificate to the War Production Board, which by Executive Order had succeeded the Secretaries of War and the Navy as the certifying agency. Although both building and machinery were essential to the increased production which the War Department wanted, the War Production Board refused to certify the full cost of the machinery. The Board issued to appellant on July 17, 1944, what it called a "letter of predetermination", stating the machinery and equipment would be eligible for amortization, but attaching two conditions which the appellant asserts were unauthorized.

Those conditions were: (1) that the machinery and equipment acquired by the appellant prior to July 17, 1944, the date of "predetermination", could not be amortized, and (2) that only 35 per cent of the cost of machinery and equipment acquired after that date could be amortized.

The first condition was imposed by the Board pursuant to its own regulation that a necessity certificate would not be issued unless application therefor had been made before the construction or acquisition of the facility.

The second condition was imposed by the Board because it had concluded that only 35 per cent of the cost of appellant's machinery installed after the date of "predetermination" could be certified as necessary to national defense, its idea being that "the facilities sought to be certified were of such a nature as to be presumably useful in post-war operations." Apparently the Board's theory was that 35 per cent of the cost of the machinery represented war-caused excess over the pre-war cost.

With respect to the first condition imposed by the Board pursuant to its regulation that application for certification must be made before the facility had been constructed or acquired,[3] the question is as to the validity of the regulation. To be sure, the Board had express authority under subsection (f)(1) to prescribe regulations governing certification. But a regulation may not conflict with the statute under which it is promulgated.

This regulation is in direct conflict with subsection (f) (3) of the statute, the pertinent portion of which follows:

"(3) The certificate provided for in paragraph (1) shall have no effect unless an application therefor is filed before the expiration of six months after the beginning of such construction, reconstruction, erection, or installation or the date of such acquisition, or before December 1, 1941, whichever is later, * * *."

Because of the conflict with the statute, the regulation was invalid and did not confer upon the War Production Board power to exclude from the necessity certificate all the

---

before June 11, 1940, and with respect to which part a certificate under subsection (f) has been made, shall be deemed to be an emergency facility and to have been completed on June 10, 1940, notwithstanding that the entire facility was not completed until after June 10, 1940."

[3] The regulation, dated December 17, 1943, 8 Fed.Reg. 16964, was approved by the President and the pertinent portion is as follows:

"(4) Application must be filed before construction is begun or date of acquisition. The construction, reconstruction, erection, installation or acquisition of a facility will not be deemed necessary within the terms of these regulations unless a determination of necessity is made by the certifying authority prior to the beginning of the construction, reconstruction, erection, installation or date of acquisition."

cost of the machinery and equipment which the appellant acquired prior to July 17, 1944. Application for certification of that cost was seasonably made under the terms of the statute and could not be refused on the ground that the application had not been made before acquisition as required by the invalid regulation.

The second condition imposed by the Board in its "letter of predetermination" which restricted the taxpayer to a deduction with respect to the amortization of only 35 per cent of the cost of its machinery and equipment acquired after July 17, 1944, was authorized, the appellee contends, by § 124 (f) (1), which is as follows:

"* * * In determining, for the purposes of subsection (a) or subsection (h), the adjusted basis of an emergency facility—

"(1) There shall be included only so much of the amount otherwise constituting such adjusted basis as is properly attributable to such construction, reconstruction, erection, installation, or acquisition after December 31, 1939, as either the Secretary of War or the Secretary of the Navy has certified as necessary in the interest of national defense during the emergency period, which certification shall be under such regulations as may be prescribed from time to time by the Secretary of War and the Secretary of the Navy, with the approval of the President."

In order to reach the extraordinary conclusion that subsection (f) (1) authorizes the certification as necessary to national defense of less than 100 per cent of the cost of a facility otherwise "emergency" in character, the appellee is forced to read subsection (f) (1) as though it provided:

"There shall be included in amortizable cost only so much of the cost of the facility as * * * the Secretary * * * has certified as necessary in the interest of national defense * * *."

Such reading omits important words in the subsection. It overlooks completely the fact that its language includes the following:

"* * * as is properly attributable to such construction * * * after December 31, 1939, as * * * the Secretary * * * has certified as necessary in the interest of national defense * * *."

The appellee's construction of subsection (f) (1) as meaning "only so much of the cost as has been certified as necessary in the interest of national defense" does plain violence to the grammatical structure of the statutory sentence, for, as has been said, it leaves out important words. Careful reading of the poorly worded subsection reveals its meaning as

There shall be included as amortizable cost only so much of the cost of the facility as is properly attributable to the part of it which was constructed after December 31, 1939, and which has been certified as necessary in the interest of national defense.

We have seen that subsection (e), in defining the term "emergency facility", expressly excluded anything constructed or acquired before December 31, 1939. That critical date of subsection (e) was carried on into subsection (f) (1), which undertook to govern a situation involving a facility, a part of which was constructed before December 31, 1939, and so could not be amortized, and the other part of which was constructed after that date and so could be certified for amortization. I admit the Congress did a poor job of statute writing in framing subsection (f) (1); but when all the subsections are read together the meaning can be spelled out. The mere fact that subsection (f) (1) is so written does not justify a construction of it which eliminates important words and thereby distorts it. I think subsection (f) (1) clearly means there can be amortized only the "adjusted basis" (which in this case means cost) of that physical portion of a facility which is "emergency" in character in that (a) it had been constructed after December 31, 1939, and (b) it had been properly certified as necessary in the interest of national defense.

The District Court's opinion, which has been adopted by my brethren as the opinion of this court, includes the following, [71 F. Supp. 946]:

"In respect of the second contention of plaintiff, that the statute does not authorize defendant to limit the amortization deduc-

tion to 35% of the cost, it should be pointed out that the statute requires that there shall be included *only so much* of the amount as is properly attributable to acquisition after December 31, 1939, as either the Secretary of War or the Secretary of the Navy [later Chairman, War Production Board] has certified as necessary in the interest of national defense, which certification shall be under such regulations as may be prescribed from time to time by the executive officials with the approval of the President."

I suggest, with deference, that the foregoing is a distortion of the grammatical construction of the statutory sentence. It leaves out significant words in the statute, as I have pointed out heretofore. For the statute says "only so much of the amount * * * as is properly attributable to such construction * * * as * * * the Secretary * * * has certified as necessary in the interest of national defense." Obviously the meaning is "such construction as the Secretary has certified as necessary"; therefore, that there shall be included only so much of the cost as is properly attributable to such construction, after the critical date, as has been certified as necessary. If that were not true, the word "such" before the word "construction" would be without significance.

The opinion of the District Court continues thus:

"* * * Here the certification was made pursuant to an established policy of the War Production Board which, after December 17, 1943, was vested with the functions of the Secretary of War and the Secretary of the Navy (Executive Order 9406 [50 U.S.C.A.Appendix § 601 note]). This policy limited amortization to excess war cost (estimated at 35%) in the case of facilities having presumptive postwar utility, which was found by the Board to be true of the facilities here involved. This would appear to be in furtherance of the legislative purpose to encourage capital investment in the defense effort which would not be available because of fear that such investment would have no postwar value, and at the same time maintain the amortization benefits under such control that they would not unduly injure the revenue."

This amounts to saying that Congress intended to write into § 124 the idea of value for post-war use which was the basis of amortization under a somewhat similar provision of the Revenue Act of 1918. 40 Stat. 1078.

Under that act, if a facility had postwar useful value the difference between that estimated value and actual cost was allowed as a special amortization deduction. The legislative history of the act now under consideration convincingly demonstrates that Congress deliberately and purposefully departed from the principle of the 1918 act because experience had demonstrated it to be unsatisfactory and not productive of the desired result.

I shall not prolong this dissent by going fully into the legislative history of § 124. One brief quotation from the testimony of the Assistant Secretary of the Treasury before the Senate Finance Committee will suffice to indicate the understanding which Congress had of the section as shown by the entire voluminous legislative history.

"Senator George: Is the certificate that is issued on the recommendation of the National Council and the Secretary of War or Navy, as the case may be, limited to mere certification that the particular facility is necessary for defense, or do they go further and specify what the depreciation and obsolescence amount to?

"Mr. Sullivan: No, they do not.

"Senator George: They turn that back to the Treasury?

"Mr. Sullivan: No, sir; under the bill automatically the amortization to which they are entitled is 20 per cent a year, for 5 years."

At the time this discussion took place, subsection (f) (1) had been passed by the House and after this testimony the only change was to eliminate any participation by the Council of National Defense, leaving the certifying power to the Secretaries of War and the Navy.

We should remember that the five-year amortization provision is in reality nothing

more than an acceleration of the ordinary allowable depreciation which in the course of time would retire the property.

A proposal that the government shall own all property which has been fully depreciated at the ordinary allowable rate would be generally· rejected as unsound. It is therefore illusory to suggest, as was done in argument, that the government should take over all facilities fully amortized in five years under § 124. A suggested inclusion in the act of a provision that the government might· acquire the facility at the end of amortization for the nominal consideration of $1.00 was rejected during congressional consideration.

After exhaustive study, I have been able to discover nothing in the language of the act, or in its legislative history, to indicate the Congress intended to give the certifying agency the right to determine that only a portion of the cost of a necessary facility could be amortized. The result in this case is so incongruous as to be almost grotesque. Here the War Department, badly in need of large quantities of graphitar, insisted that the appellant erect a new building and equip it with the necessary machinery, which the appellant proceeded to do. The Secretary of War certified the building to have been necessary in the interest of national defense. It does not comport with common sense for the War Production Board in 1944 to certify that only 35 per cent of a fraction of the cost of the machinery was necessary in the interest of national defense. The building alone could not produce graphitar and yet the building was certified as necessary in its entirety. It is not suggested that the need for graphitar was any less pressing in 1944 than in 1943.

For the reasons given I think the decision of the court is wrong. The judgment of the District Court should be reversed.