dence relative to plaintiff's status from October 27, 1948, to December 17, 1948, with specific reference to whether plaintiff was placed in the status of leave without pay at his own request.

Similarly we note that following the mandatory recommendation for reinstatement in connection with the third period of wrongful separation, under date of July 13, 1949, plaintiff was requested to report to the agency on or about July 25, 1949, relative to reinstatement. Whether that request contemplated actual reinstatement on July 25, 1949, or whether it was merely preliminary thereto with actual reinstatement to follow thereafter, does not yet appear. The record discloses, however, that actual reinstatement was postponed until August 30, 1949. The defendant states, again in its brief, that such postponement was at plaintiff's request, and plaintiff in his reply brief assumes the truth of this statement. As we have indicated earlier we are of the opinion that to the extent that such postponement resulted at plaintiff's request, and therefore could not be reasonably attributed to the wrongful action of the Government in removing plaintiff from his position in a procedurally improper manner, plaintiff should not be allowed to recover compensation in an action based upon the wrongful separation. That the Government might have refused to honor plaintiff's request for a postponement, as plaintiff points out, does not relieve plaintiff of the consequences. If the Government grants such a privilege to an employee, it does not behoove the employee to complain thereof.

Inasmuch as the record is incomplete, however, as to the extent of the postponement of plaintiff's reinstatement, and is silent as to whether such postponement was at plaintiff's request—although the latter point is touched upon in the briefs—the parties will be afforded an opportunity to offer such proof as they may have on these points.

Defendant's motion for summary judgment on plaintiff's first two claims is denied. Plaintiff's motion for summary judgment on the issue of liability on the first two claims is granted, for the periods April 30, 1946, to July 15, 1947, and August 15, 1947,

to July 26, 1948, respectively. Plaintiff's motion for summary judgment is granted on the issue of liability on the third claim for the periods July 27, 1948, to October 27, 1948, and December 17, 1948, to July 25, 1949. Plaintiff's motion for summary judgment on the issue of liability, insofar as it relates to the periods October 27, 1948, to December 17, 1948, and July 25, 1949, to August 30, 1949, is denied. The case will be referred to a commissioner of the court for the taking of evidence as to (1) whether it was at plaintiff's own request that he was placed on leave without pay from October 27, 1948, to December 17, 1948; (2) whether the postponement of plaintiff's reinstatement ultimately effected on August 30, 1949, resulted at plaintiff's own request; and (3) if so, the extent of such postponement, i. e., when, but for such request, plaintiff would have been restored to his position. The commissioner will also, of course, take evidence as to the amount of compensation to which plaintiff is entitled under this opinion.

It is so ordered.

HOWELL, MADDEN, WHITAKER, and LITTLETON, JJ., concur.

## WICKES CORP. v. UNITED STATES.

### No. 50224.

United States Court of Claims.

Dec. 2, 1952.

John W. Hussey, Washington, D. C., with whom was Asst. Atty. Gen. Charles S. Lyon, for the defendant. Andrew D. Sharpe, Washington, D. C., was on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiff seeks to recover from the Government excess profits taxes in the amount of $43,610.29 for the year 1944 and of $93,146.01 for the year 1945. The taxes were paid by The United States Graphite Company. That company was later merged into the plaintiff company, which succeeded to its rights to the claims herein asserted. The instant dispute depends upon the proper interpretation and application of the statutes permitting a corporation which built or expanded its plant or equipment in order to increase wartime production to amortize the cost of such plant or equipment over a short period of years, by deductions from its income for tax purposes.

Section 23(t) of the Internal Revenue Code, 26 U.S.C.A. § 23(t), provided, during the years here in question, for the deduction from gross income of "the deduction for amortization provided in section 124." Section 124 is, therefore, the key section in this case. That section, in subsection (a), said that a taxpayer at his election was entitled to a deduction on the basis of the amortization of any emergency facility during a period of sixty months. It referred to paragraph (e) for the definition of an emergency facility. The first sentence of subsection (e) says:

"As used in this section, the term 'emergency facility' means any facility, land, building, machinery, or equipment, or part thereof, the construction, reconstruction, erection, installation, or acquisition of which was completed after December 31, 1939, and, with respect to which a certificate under subsection (f) has been made."

Subsection (f) said:

"In determining, for the purposes of subsection (a) or subsection (h),

J. Marvin Haynes and N. Barr Miller, Washington, D. C., for the plaintiff. Haynes & Miller, F. Eberhart Haynes and Oscar L. Tyree, Washington, D. C., were on the briefs.

the adjusted basis of an emergency facility (1) There shall be included only so much of the amount otherwise constituting such adjusted basis [1] as is properly attributable to such construction, reconstruction, erection, installation, or acquisition after December 31, 1939, as either the Secretary of War or the Secretary of the Navy has certified as necessary in the interest of national defense during the emergency period, which certification shall be under such regulations as may be prescribed from time to time by the Secretary of War and the Secretary of the Navy, with the approval of the president."

For brevity, we refer to the plaintiff's predecessor, The United States Graphite Company, to whose rights the plaintiff has succeeded, as the plaintiff. It was, during the Second World War, engaged in the manufacture of graphitar, which was used by the armed services and the Maritime Commission in the construction of aircraft, ships and other equipment used in the prosecution of the war. In 1943 the Government's demand for graphitar exceeded the capacity of the plaintiff's plant and facilities. Procurement officials encouraged the plaintiff to enlarge its facilities, and the plaintiff, prior to June 27, 1943, made plans to do so. It was granted high priorities for the obtaining of the materials, supplies and equipment needed for the enlargement.

On June 27, 1943, the plaintiff, in order to obtain the benefits of the rapid amortization provided for in Section 124 of the Internal Revenue Code, applied to the Secretary of War for a "necessity certificate" covering its proposed new factory building. That certificate was granted on October 28, 1943, and is not here in question. When the building was under way, the plaintiff applied to the War Production Board for preference ratings or priorities to assist it in obtaining the machinery and equipment for the new plant. These applications were made from October 7 to December 10, 1943, and were promptly granted. The machinery and equipment were obtained by the plaintiff and installed in the factory on various dates between December 28, 1943, and December 15, 1944.

By Executive Orders 9406 and 9429 issued December 17, 1943, and March 2, 1944, the President transferred to the Chairman of the War Production Board the functions which had formerly been exercised by the Secretary of War and the Secretary of the Navy, with regard to the issuance of necessity certificates. On May 29, 1944, the plaintiff duly filed an application for such a certificate covering machinery and equipment having a total estimated cost of $255,002.79. To the application was appended a list of the items included. On July 17, 1944, the War Production Board advised the plaintiff by letter that it had been determined that the machinery and equipment listed in the plaintiff's application were eligible for tax amortization on a 35% basis, provided that the items were to be acquired after the date of the letter. The Board's letter said that a Certificate of Necessity would be issued, as of July 17, 1944, after the Board had received a schedule in affidavit form stating, with respect to each item, that it had not been acquired before July 17, 1944.

The requested affidavit was filed by the plaintiff on July 27, 1944. It showed, of course, that some of the facilities had been acquired before July 17, 1944, and that the others had been or would be acquired after that date. On or about July 31, 1944, but as of July 17, 1944, the Board issued to the plaintiff a necessity certificate stating that the facilities described in the attached Appendix A were "necessary in the interest of national defense during the emergency period, up to 35% of the cost" thereof. The attached Appendix A was the list which the plaintiff had submitted with its affidavit. The items thereon shown to have been received before July 17, 1944, were, however, crossed over with Xs made by a red pencil. On April 2, 1946, the Civilian Production Administration, which had, apparently, succeeded to the functions of the War Production Board issued an

---

[1]. The parties are agreed that the "adjusted basis" of the property here in question was its cost.

amendment to the Necessity Certificate, which amendment listed in detail the actual cost of the facilities received before and after July 17, 1944. It showed that the cost of those received before that date was $77,195.99, and of those received after that date was $140,031.44. Those figures were correct, and the present controversy concerns only the application of the amortization law to those amounts.

At the request of the plaintiff for a statement of the reasons for its action, the Civilian Production Administration on August 12, 1946, wrote the plaintiff that it was the Administration's policy, in cases where the facilities to be acquired would be useful in post-war operations, to limit necessity certificates to 35% of the cost of the facilities. The plaintiff had, earlier, been orally advised that the 35% figure had been selected because that was the estimated excess of the cost of the facilities in wartime over what would have been their peacetime cost.

The taxing authorities, in imposing excess profits taxes upon the plaintiff, allowed it to deduct accelerated amortization upon only 35% of the cost of the facilities acquired after July 17, 1944, and no such amortization at all upon those acquired before that date. The plaintiff contends that it should have been allowed to deduct accelerated amortization upon the full cost of both kinds of facilities.

██ We consider first the facilities acquired after July 17, 1944. As to those, War Production Board certified that they were eligible for accelerated amortization for tax purposes under Section 124. The plaintiff says that the Board had no power to put the 35% limit on the amount of the cost of the facilities on which amortization should be computed. We agree with the plaintiff. When Congress took the drastic step of conferring the important tax advantage of rapid amortization upon those private enterprises which would invest their own money in expanding their facilities to increase wartime production, it knew that in some cases the enterprises would have, at the end of the war, facilities still useful but which had been paid for, to a considerable extent, by reductions in income

and excess profits taxes. See Hearings before the Senate Committee on Finance on the Second Revenue Act of 1940, 76th Cong. 3d Sess. (1940) 124, 125. Yet Congress provided for their amortization over a period of five years. When the War Production Board attempted to limit to 35% the proportion of the cost which could be so amortized, it was, in effect saying that the actual cost could be amortized, during the first five years, only to the degree which would contemplate its total amortization in about fifteen years. That was a contradiction of the statute. The Board, as we have seen, decided upon the 35% figure because that was its estimate of the excess cost of acquiring the facilities in wartime. But there is no suggestion in the statute or its legislative history that such a consideration had any relevance. The purpose of the statute was to induce private enterprises to acquire facilities for which they would have had no need, except for the pressure of wartime production. According to the Board's reasoning, if price and wage controls had kept the wartime cost of the facilities down to the peacetime cost, no use whatever would have been made of Section 124. But an enterprise does not spend its money to acquire unneeded facilities, or those which will be needed for only a short time, just because it can acquire them at normal prices.

We think that the Board's only function was to determine whether or not facilities answered the description of the statute, i. e., were they "necessary in the interest of national defense during the emergency period." Having so determined, any attempt by the Board to reduce the benefits which Congress granted to the person whose facilities answered the description, was in violation of the statute. The Government suggests that if the Board could not have limited its certificate to 35% of the costs of the facilities, it would, perhaps, not have certified them at all. We have no reason to suppose that the Board, when applied to by the plaintiff for a factual statement as to whether the plaintiff's facilities were, or were not "necessary in the interest of national defense during the emergency period," would have said to itself, "If we

make a true statement, it will cost the Government X dollars in lost revenue. If it would cost the Government only Y dollars, we would tell the truth. But since it will cost X dollars, we will not tell the truth."

The Government points to the language of Section 124(f), hereinbefore quoted which says that there shall be included for rapid amortization purposes "only so much of the amount otherwise constituting such adjusted basis as is properly attributable to such construction * * * or acquisition after December 31, 1939, as either the Secretary of War or the Secretary of the Navy has certified as necessary [etc.]" The Government says that this language authorized the certifying authority to certify only a part of the cost of the facilities, in his discretion. We think that this is a misreading of the statute. Subsection (e) (1) of Section 124, in defining the term "emergency facility" gives a somewhat complicated formula for determining the time at which the facility must have been acquired in order to be eligible for accelerated amortization. Apparently December 31, 1939, was the date after which, in any event, the facility must have been acquired in order to be so eligible. But even if acquired after that date, application for a necessity certificate had to be made within six months after its acquisition. And if some of the facility was acquired more than six months before the date of application, and the rest within six months, the latter amount would be eligible. Thus the words "only so much of [etc.]" are needed, and have a rational application without construing them as authorizing the certifying authority to contradict the purpose of the statute.

As to the facilities acquired before July 17, 1944, the problem is somewhat different. It will be remembered that the plaintiff applied for its certificate of necessity on all of its facilities on May 29, 1944. The earliest date at which it had acquired any of the facilities was December 28, 1943, so that its application was within six months of the acquisition. On July 17, 1944, the Board wrote the plaintiff that it had made a determination that all the facilities were necessary in the interest of national defense, provided the date of their acquisition was subsequent to the date of the letter. The Board requested the information, in affidavit form, hereinbefore described, and, having received it, issued its certificate, attaching the entire list, but having crossed out the items which were acquired before July 17, 1944.

The Government points to Section 124(f) (1) which says that one gets accelerated amortization upon facilities which either the Secretary of War or the Secretary of the Navy has certified as necessary in the interest of national defense. It says that as to the facilities acquired before July 17, 1944, no certificate was issued, and that's the end of it. No certificate, no amortization. Since the Board's letter of July 17 stated that all the facilities listed were necessary, and since the plaintiff's application for its certificate was filed within the six months statutory period, the question arises, of course, why the Board refused to issue the certificate upon at least the 35% basis.

[3–5] On March 22, 1944, the Board, with the approval of the President, issued the following regulation (8 Fed.Reg. 2492, March 4, 1944):

"Section 4. *Application must be filed and determination made before construction is begun or date of acquisition.* The construction, reconstruction, erection, installation, or acquisition of a facility will not be deemed necessary within the terms of these regulations unless a determination of necessity is made by the certifying authority prior to the beginning of the construction, reconstruction, erection, installation, or date of acquisition."

The plaintiff contends that the regulation is invalid. When Section 124 was originally enacted, in the Second Revenue Act of 1940, approved October 8, 1940, subsection (f) (3) provided that a certificate of necessity would be ineffective unless obtained before the facility was acquired. By Joint Resolution, approved January 31, 1941, subsection (f) (3) was amended to provide that certificates of necessity would be valid if applications for them were made

within sixty days after the acquisition of the facility. Again, in October 1941, by House Joint Resolution 235, Public Law 285, 77th Cong., 1st Sess., Ch. 464, Congress again amended subsection (f) (3) and enlarged the period within which application for a certificate might be filed from sixty days to six months after the acquisition of the facility.

Congress having specifically and repeatedly dealt with the question of when applications might be filed, and having each time enlarged the period, we think that the regulation quoted above, which in effect discarded the amendments made by Congress and put into effect the requirements of the original statute, was invalid. We think, therefore, that the plaintiff having applied within six months for its certificate, it was the duty of the certifying officer to determine the fact as to whether the facilities were necessary in the interest of national defense, and to certify or refuse to certify accordingly. The Chairman of the Board did determine that the facilities were necessary, and issued the letter of July 17 so saying. He then refused to issue the formal certificate solely because of the regulation which we have said above was invalid. He having put his mind upon the question of fact, which we think was his only function under the statute, and having answered that question in favor of the plaintiff, it was his duty to issue the certificate, and we feel certain that he would have done so but for the invalid regulation. His refusal, therefore, amounted in law, though not in fact, to an arbitrary refusal to perform his statutory duty. We have no reason to suppose that the enormous tax benefits which Congress, wisely or not, sought to confer by the enactment of Section 124 were to be bestowed or withheld at the arbitrary will of the executive. Equity regards that as done which ought to have been done. We do not have here the problem of deciding, contrary to the decision of the official in which the statute lodged the power of decision, that the facilities in question were necessary. He decided that they were. We merely append the proper legal consequences to his decision by disregarding the invalid regulation which prevented him from putting his factual decision in legal form. We conclude, therefore, that the facilities acquired by the plaintiff before July 17, 1944, were eligible for accelerated amortization, and that the plaintiff is entitled to that amortization.

Substantially the same questions involved in the instant case were presented to the United States District Court for the District of Columbia in United States Graphite Co. v. Harriman, Secretary of Commerce, D.C., 71 F.Supp. 944. That was a suit by the plaintiff's predecessor, the Graphite Company, to compel the issuing authority to issue the certificates of necessity which would have entitled that company to the tax deductions which the plaintiff claims here. The District Court, Judge Pine sitting, denied relief. The United States Court of Appeals affirmed, 84 U.S.App.D.C. 336, 176 F.2d 868, upon the opinion of Judge Pine. Judge Wilbur K. Miller of the Court of Appeals dissented, in an opinion with which we agree. The Supreme Court denied certiorari. 339 U.S. 904, 70 S.Ct. 518, 94 L.Ed. 1333. The Government does not claim that that litigation made the dispute a res adjudicata. In the circumstances we are, naturally, skeptical of the correctness of our conclusions.

The plaintiff is entitled to recover. Entry of judgment will be suspended to await the filing by the parties of a stipulation showing the amount due the plaintiff, according to our findings and opinion.

It is so ordered.

HOWELL, WHITAKER and LITTLETON, Judges, concur.

JONES, Chief Judge (dissenting in part).

I agree that plaintiff should recover but the amount should be limited to 35 percent of the cost of the facilities.

I think the provision of Section 124(f) (1) of the Internal Revenue Code which is as follows:

"(1) There shall be included only so much of the amount otherwise constituting such adjusted basis as is properly attributable to such * * * acquisition after December 31, 1939, as either

622

the Secretary of War or the Secretary of the Navy has certified as necessary in the interest of national defense during the emergency period, which certification shall be under such regulations as may be prescribed from time to time by the Secretary of War and the Secretary of the Navy, with the approval of the President. * * *"

clearly authorized the executive officials to limit the amount of the amortization. United States Graphite Co. v. Harriman, D.C., 71 F.Supp. 944. United States Graphite Co. v. Sawyer, 84 U.S.App.D.C. 336, 176 F.2d 868 (certiorari denied).

## EMPIRE ORDNANCE CORP. v. UNITED STATES.
### No. 49462.

United States Court of Claims.
Dec. 2, 1952.

H. Frank Van Lill, Cleveland, Ohio, Bartley C. Crum, New York City, on the brief, for plaintiff.

Carl Eardley, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

This case is before us on plaintiff's motion to dismiss Count I of defendant's counterclaim, or, in the alternative, to stay all proceedings on Count I until certain