**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**NATIONAL LEAD COMPANY, Respondent.**

No. 253, Docket 23902.

United States Court of Appeals Second Circuit.

Argued Jan. 13, 1956.

Decided Feb. 14, 1956.

H. Brian Holland, Asst. Atty. Gen., Lee A. Jackson, Hilbert P. Zarky, Frank E. A. Sander, Attorneys, Department of Justice, Washington, D. C., for petitioner.

Karl Riemer, Washington, D. C. (Pehle, Lesser, Mann, Riemer & Luxford,

Washington, D. C., on the brief), for the respondent.

Before CLARK, Chief Judge, and FRANK and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

This is a petition by the Commissioner for review of a decision by the Tax Court that the taxpayer was entitled to accelerated amortization under § 124 of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 124, of the entire cost of certain "emergency facilities" constructed during World War II. Section 124(e) (1) provided:

"As used in this section, the term 'emergency facility' means any facility, land, building, machinery, or equipment, or part thereof, the construction, reconstruction, erection, installation, or acquisition of which was completed after December 31, 1939, and with respect to which a certificate under subsection (f) has been made."

Section 124(f) (1) provided for the inclusion in the basis of such an emergency facility of:

"so much of the amount otherwise constituting such adjusted basis as is properly attributable to such construction, reconstruction, erection, installation, or acquisition after December 31, 1939, as either the Secretary of War or the Secretary of the Navy has certified as necessary in the interest of national defense during the emergency period, which certification shall be under such regulations as may be prescribed from time to time by the Secretary of War and the Secretary of the Navy, with the approval of the President."

Section 124(f) (3) further provided that:

"In no event and notwithstanding any of the other provisions of this section, no amortization deduction shall be allowed in respect of any emergency facility for any taxable year—(C) unless a certificate in respect thereof under paragraph (1) shall have been made (i) prior to the filing of the taxpayer's return for such taxable year, or prior to the making of an election * * * to take the amortization deduction, or (ii) before December 1, 1941, whichever is later * * *."

On December 17, 1943 the President transferred the certifying function to the War Production Board. Executive Order 9406, 8 Fed.Reg. 16955, U.S.Code Cong. Service 1943, p. 5.100. In 1944 the Board issued to the taxpayer certificates that the facilities now in question "are necessary to the national defense during the emergency period, up to 50% [or in some cases 35%] of the cost attributable to the construction, reconstruction, erection, installation or acquisition thereof * * *" It appears that these partial certificates were issued pursuant to a policy of the WPB, adopted toward the end of the war, of certifying only that part of the cost of a facility attributable to excess war costs.

In filing its return for 1944 the taxpayer claimed accelerated amortization only for the percentage of the cost which had been certified, taking ordinary depreciation on the rest. When the Commissioner subsequently asserted a deficiency against the taxpayer for the year 1944 based on other grounds, the taxpayer filed a petition with the Tax Court on November 21, 1951, seeking to have that court review the deficiency. On April 9, 1954 the taxpayer filed an amended petition, claiming for the first time that the WPB had no authority under the statute to certify only excess war costs and that it is entitled to amortization of the entire cost of the facilities. The Tax Court accepted this argument.

The question whether the WPB had authority to issue these partial certificates presents an interesting problem of statutory interpretation on which courts have differed. Compare United States Graphite Co. v. Harriman, D.C., 71 F.Supp. 944, affirmed sub nom. United States Graphite Co. v. Sawyer, 84 U.S. App.D.C. 336, 176 F.2d 868, certiorari

denied, 339 U.S. 904, 70 S.Ct. 518, 94 L. Ed. 1333, with Wickes Corp. v. United States, 1952, 108 F.Supp. 616, 123 Ct.Cl. 741 and Ohio Power Co. v. United States, 1955, 129 F.Supp. 215, 131 Ct.Cl. 95, certiorari denied 350 U.S. 862, 76 S.Ct. 104. We do not reach this question, however, since we conclude that the taxpayer no longer has any right to raise the issue.

■ The statutory provisions set out above map out a scheme in which the function of determining whether facilities are necessary to the national defense is entrusted solely to the WPB. The determination whether facilities are necessary is within that agency's discretion and is conclusive so long as the discretion is exercised on the basis of criteria not clearly irrelevant to the statutory purpose. An exercise of the agency's discretion is preliminary to any right to claim accelerated amortization under the Code. The agency's decision ordinarily must take place and be evidenced by a certificate made prior to the time when a tax return for the year in question is filed.

■ It seems clear that if the WPB had denied a certificate altogether on the ground that the facilities were not necessary to the national defense, there would be no review of that action in any forum. Even if the WPB had refused to exercise its discretion or had based its decision on grounds impermissible under the statute, the failure to issue a certificate could not be challenged in the Tax Court. That Court could not exercise the discretion committed to the WPB under the statute and would therefore be incapable of correcting that agency's error.

■ But the taxpayer urges that we do not have that problem here because it was implicit even in the issuance of the partial certificates that the WPB had determined the facilities to be necessary to the national defense. We do not agree. The certificates stated only that the facilities were "necessary to the national defense up to 50% [or 35%] of the cost." This statement did not explicitly say that the facilities were necessary in their entirety. Nor is it implicit in the certificate given that the WPB would have determined the facilities to be necessary if the consequence of that determination had been to allow accelerated amortization of the entire cost. The taxpayer's argument on this point follows that of the Court of Claims in Wickes Corp. v. United States, supra. The Court there said [108 F.Supp. 619]:

"The Government suggests that if the Board could not have limited its certificate to 35% of the costs of the facilities, it would, perhaps, not have certified them at all. We have no reason to suppose that the Board, when applied to by the plaintiff for a factual statement as to whether the plaintiff's facilities were, or were not 'necessary in the interest of national defense during the emergency period,' would have said to itself, 'If we make a true statement, it will cost the Government X dollars in lost revenue. If it would cost the Government only Y dollars, we would tell the truth. But since it will cost X dollars, we will not tell the truth.'"

The difficulty with this argument is that it assumes the determination of a facility's necessity to the national defense to be a black-or-white proposition ascertainable without reference to the cost to the Government. The determination whether a given facility was "necessary" was a policy question involving the weighing of many factors. Among these were the importance of the facility in the scheme of national defense and the cost of the facility to the Government in lost revenues. The certifying authority had to weigh importance against cost and determine whether that cost could best be expended there or elsewhere, and whether the desired facility could best be obtained through private financing with rapid amortization or through government financing. It is therefore evident that the partial certificates which the Board issued represented only a determination that the facility was necessary on the assumption that 35% or 50% rapid amortization would be al-

lowed. If the percentage of cost subject to amortization was varied, the cost to the government would vary, and the determination as to necessity might not be the same.

 Since the Board never determined that the facilities in question were necessary to the national defense in their entirety, it was error for the Tax Court to permit accelerated amortization of their entire cost. Neither that court nor any other court could make the determination of necessity entrusted to the Board. Cf. Federal Power Comm. v. Idaho Power Co., 1952, 344 U.S. 17, 20–21, 73 S.Ct. 85, 97 L.Ed. 15. The proper way in which to challenge the Board's alleged error was to attack it directly by mandamus in the District of Columbia. The courts of the District have entertained mandamus proceedings for that purpose, United States Graphite Co. v. Harriman, D.C.D.C. 1944, 71 F.Supp. 944, affirmed per curiam sub nom. United States Graphite Co. v. Sawyer, 1949, 84 U.S.App.D.C. 336, 176 F.2d 868, certiorari denied, 339 U.S. 904, 70 S.Ct. 518, 94 L.Ed. 1333, and the remedy was altogether appropriate. If the petitioner had sought mandamus or appropriate injunctive relief in the District of Columbia and had been successful, a prompt and proper exercise of the Board's discretion would still have been possible. Instead the petitioner chose to accept the benefit of the partial certificate without claiming that it was based on an action outside the authorization of the statute. It is now impossible for any court or administrative agency or official to make a proper determination of necessity based on the considerations relevant in 1944 when the certificate was issued. In any event no one can now summon up or accurately recall the relevant conditions which existed over ten years ago. Under these circumstances the taxpayer has forfeited his right to challenge the Board's action. Cf. Callanan Road Improvement Co. v. United States, 1953, 345 U.S. 507, 512–513, 73 S.Ct. 803, 97 L.Ed. 1206. The language of the Supreme Court in the Callanan case is quite pertinent here:

"The appellant cannot blow hot and cold and take now a position contrary to that taken in the proceedings it invoked to obtain the Commission's approval. If the appellant then had taken the position it seeks now, the Commission might conceivably have refused its approval of the transfer. The appellant accepted the transfer with the limitations contained in the certificate. The appellant now will not be heard to say it is entitled to receive more than its transferor had or the certificate transferred gave." 345 U.S. at page 513, 73 S.Ct. at page 806.

The taxpayer here may well have been denied a certificate altogether if it had challenged the Board's action. Having accepted the certificate it is now bound by its limitations.

The decision of the Tax Court is reversed.