# UNITED STATES *v.* ALLEN-BRADLEY CO.

No. 78. Argued December 13, 1956.—Decided January 22, 1957.

*Hilbert P. Zarky* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Rice, Philip Elman* and *Joseph F. Goetten.*

*Harvey W. Peters* argued the cause and filed a brief for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

In 1940 this country embarked on the greatest program of defense preparedness in its history. Such an undertaking called for a vast expansion of the nation's industrial capacity. New and improved facilities were desperately needed, not only for the production of guns, planes and the other obvious weapons of war, but also for the innumerable items that are essential to the prosecution of large-scale conflict. This unprecedented program of expansion demanded the full and immediate cooperation of everyone who could lend assistance. While the Government attempted to secure the necessary facilities by building them itself or by extending emergency construction loans to private business, it soon appeared that these methods would not be adequate to meet the needs of defense. Private capital was called on for assistance in

the task.   However business exhibited a reluctance to build new war plants because of widespread fears that such facilities would become wholly useless when the emergency had passed.   In response to these fears, Congress acted to lessen the financial risks involved in the private construction of emergency facilities.   Among other things it amended the 1939 Internal Revenue Code by adding §§ 23 (t) and 124,[1] which allowed business to write off the cost of new facilities as a deduction against taxable income within a period of five years or less, regardless of the actual economic life of the facilities, provided they had been certified by the proper executive agency as "necessary in the interest of national defense."   This accelerated amortization privilege generally enabled those businesses receiving it to reduce their federal income taxes with the net result that a large part of the construction costs was, at least temporarily, borne by the Federal Government through a reduction in its tax receipts.

This case involves a question of the proper interpretation of § 124 (f), a vital part of these accelerated amortization provisions.   The essential facts are not in dispute. During the Second World War the respondent Allen-Bradley Company produced radio parts and other materials needed by the Government to carry on the war. These products were in critically short supply and at the request of government procurement officers respondent repeatedly increased and improved its facilities in order to boost its output.   In connection with such expansions it applied to the War Production Board, which was then the certifying authority, for certificates that the improvements were necessary to the national defense.   The Board issued nine different certificates of necessity to respondent but the dispute here involves only three of these certificates.   Each of these three stated that the facilities

---

[1] 54 Stat. 998–1003, as amended, 26 U. S. C. §§ 23 (t), 124.

covered by it were necessary in the interest of national defense but only up to a specified percentage of their total cost. This "partial certification" was made pursuant to a policy adopted by the Board in 1943 that it would certify essential facilities, which could reasonably be expected to have peacetime utility, only to the extent that their costs were attributable to the wartime increase in prices. Respondent accepted these partial certifications, proceeded with the expansion and in its tax returns for 1944 and 1945 deducted an amount based on the accelerated amortization of that part of the total cost which had been certified by the Board.

In 1953 respondent first raised the claim which is the basis of this suit that the Board had no authority to certify only part of the cost of a necessary emergency facility. Respondent concedes that the Board had discretion to refuse to issue any certificate at all, but contends that once it decided that a facility was necessary to the national defense its function was at an end and that any attempt by it to limit the certification to a part of the cost of such facility was a nullity. Therefore, respondent contends, it was entitled to accelerate the amortization of the full cost of those facilities covered by the three partial certificates and not just that part of the full cost which had been certified by the Board. On the basis of these contentions respondent filed the present action in the Court of Claims to recover an alleged overpayment of its 1944 and 1945 income taxes. The Court of Claims accepted respondent's arguments and rendered judgment for it. 134 Ct. Cl. 800. We granted certiorari, 351 U. S. 981, because of the conflict between this decision and that of the Court of Appeals for the Second Circuit in *Commissioner* v. *National Lead Co.*, 230 F. 2d 161.

The language of the crucial section 124 (f) is ambiguous. It specifies that in determining the amount of the

wartime construction costs which are to be available for the special amortization privilege:

"(1) There shall be included only so much of the amount . . . as is properly attributable to such construction . . . after December 31, 1939, as [the War Production Board] has certified as necessary in the interest of national defense during the emergency period . . . ."

Respondent argues that the phrase "only so much of the amount" in this section refers simply to that part of the cost of facilities that is attributable to construction after 1939. On the other hand the Government contends that this qualifying phrase refers not only to those costs incurred after 1939, but also to that portion of those costs which the War Production Board has certified is necessary to the national defense. We believe that either interpretation is possible; that neither is compelled. But those who were responsible for the administration of the Act consistently interpreted § 124 (f) as authorizing them to certify that only a part of the costs of construction after 1939 was necessary to the national defense.[2]

The legislative history shows that Congress intended that the administrators of the certification program were to have broad discretion in exercising their power. These administrators were faced with extremely complicated problems in attempting to accomplish the desired objective of Congress in the face of constant and drastic changes in conditions. And as the nation's industrial capacity became more adequate they carefully balanced the need for the proposed expansion against the loss of

---

[2] See War Department Regulations, Issuance of Necessity Certificates, 7 Fed. Reg. 4233 (1942); War Production Board Regulations, Issuance of Necessity Certificates, 8 Fed. Reg. 16964 (1943). And compare Treas. Reg. 111, § 29.124–6.

revenue to the Government caused by accelerated amortization before issuing a certificate. The power to certify only a portion of the cost gave them a more flexible instrument to balance these conflicting objectives.

It appears that Congress kept close supervision over the certification program and the special amortization privilege. For example, § 124 was amended five times during the war;[3] two of these amendments altered § 124 (f) itself in a manner which did not affect the language decisive of the present controversy. But no attempt was made to restrain the administrators from issuing certificates covering only a part of the cost of necessary facilities, although it seems apparent that responsible committees of Congress were aware that § 124 (f) had been consistently interpreted and applied by the certifying authorities as permitting them to issue such certifications. In fact a special Senate "watch-dog" committee was established to continually study and investigate the program for construction of war plants and facilities including the ". . . benefits accruing to contractors with respect to amortization for the purposes of taxation or otherwise . . . ."[4]

Perhaps § 124 (f) could have been construed differently. But it was not. Construed as it was, it served its purpose. It contributed materially to the phenomenal expansion of our industrial plants which was so necessary for successful prosecution of the war. Certificates issued for only a portion of the cost of necessary facilities were accepted by business in general, and respondent in particular—apparently without substantial objection. The technique employed in § 124 (f) was a new one and those who drafted that section could not be certain how it would

---

[3] 55 Stat. 4, 55 Stat. 757, 56 Stat. 50, 56 Stat. 850 and 59 Stat. 525.

[4] S. Res. 71, 77th Cong., 1st Sess. (87 Cong. Rec. 1615), and S. Res. 6, 78th Cong., 1st Sess. (89 Cong. Rec. 331).

work in practice. They could not foresee the many problems that would arise in the administration of this sweeping power which could be used to encourage expansion of any industry producing materials useful in the all-out war effort. Therefore it is not strange that the provision was loosely drawn and, in some respects, imprecise. However it would have been strange in these circumstances if Congress had embarked on this new course without leaving wide discretion for flexible administration in the light of the day-to-day grind of experience. The language of § 124 (f) lends itself to such flexibility.

We hold that the Board had authority under § 124 (f) to issue certificates, as in this case, certifying that only a part of the cost of essential wartime improvements was necessary to the national defense. Therefore, the judgment of the Court of Claims must be reversed.

*It is so ordered.*

MR. JUSTICE HARLAN, concurring.

Both the terms of the statute, and the fact that two courts of such special expertise in tax matters as the Tax Court and Court of Claims have sustained the taxpayer's position,[1] leave me doubtful as to whether, under the statutory provisions in question,[2] the War Production Board had the right to issue partial certificates. The Court finds ambiguity in the statute, but, in resolving that ambiguity as it has, does little more than point out

---

[1] *National Lead Co.* v. *Commissioner,* 23 T. C. 988; *Allen-Bradley Co.* v. *United States,* 134 Ct. Cl. 800.

[2] 26 U. S. C. § 124 (f) (1), from which the Court quotes, must be read in context with 26 U. S. C. §§ 124 (e) (1) and 124(f)(3). Together these sections provide:

§ 124 (e) (1). "As used in this section, the term 'emergency facility' means any facility, land, building, machinery, or equipment, or part thereof, the construction, reconstruction, erection, installation, or acquisition of which was completed after December 31, 1939, and

that Congress did not interfere with the authority claimed by the Board.

However, in my view the scope of the Board's powers need not be reached in this case, because, for the reasons given by Judge Lumbard in his opinion for the unanimous Court of Appeals in *Commissioner* v. *National Lead Co.*, 230 F. 2d 161, I think it clear that respondent cannot maintain the present action. On that basis I join in the Court's decision.

---

with respect to which a certificate under subsection (f) has been made. . . ."

§ 124 (f). "In determining, for the purposes of subsection (a) . . . the adjusted basis of an emergency facility—

"(1) There shall be included only so much of the amount otherwise constituting such adjusted basis as is properly attributable to such construction, reconstruction, erection, installation, or acquisition after December 31, 1939, as either the Secretary of War or the Secretary of the Navy has certified as necessary in the interest of national defense during the emergency period, which certification shall be under such regulations as may be prescribed from time to time by the Secretary of War and the Secretary of the Navy, with the approval of the President."

§ 124 (f) (3). ". . . In no event and notwithstanding any of the other provisions of this section, no amortization deduction shall be allowed in respect of any emergency facility for any taxable year—

"(C) unless a certificate in respect thereof under paragragh (1) shall have been made (i) prior to the filing of the taxpayer's return for such taxable year, or prior to the making of an election . . . to take the amortization deduction, or (ii) before December 1, 1941, whichever is later . . . ."

On December 17, 1943, the powers under these sections were transferred by the President to the War Production Board.