**UNITED STATES GYPSUM COMPANY,**
Plaintiff-Appellee,

v.

**UNITED STATES of America,**
Defendant-Appellant.

No. 12184.

United States Court of Appeals
Seventh Circuit.

April 10, 1958.

Robert Tieken, U. S. Atty., Chicago, Ill., Charles K. Rice, Asst. Atty. Gen., Sheldon I. Fink, Lee A. Jackson, Harry Baum, Attorneys, Department of Justice, Washington, D. C., Donald S. Lowitz, Asst. U. S. Atty., Chicago, Ill., for appellant.

Charles M. Price, Chicago, Ill., Robert M. Gunn, Chicago, Ill., MacLeish, Spray, Price & Underwood, Chicago, Ill., of counsel, for appellee.

Before HASTINGS and PARKINSON, Circuit Judges, and WHAM, District Judge.

WHAM, District Judge.

The appeal herein is by the United States of America from the decision of the United States District Court wherein United States Gypsum Company, hereinafter referred to as "taxpayer", recovered a judgment for income and excess profits taxes paid, with interest, for the year ending December 31, 1951.

The taxpayer is engaged in mining and processing gypsum, which is a natural mineral chemically described as $CaSO_4$ $2H_2O$, or hydrous calcium sulphate. During the year 1951, it operated fourteen separate deposits either as underground mines or open quarries. In its Federal Income and Excess Profits Tax Return filed for the year ending December 31, 1951, taxpayer claimed certain deductions among which was a deduction from gross income of $671,626.90 for percentage depletion of its natural mineral deposits of gypsum at the rate of five per cent under Section 114(b) (4) (A) (i) of the Revenue Act of 1951, 26 U.S.C.A. § 114(b) (4) (A) (i). This deduction was disallowed by the Commissioner as not within the terms of the statute and taxpayer was assessed an additional amount of $637,997.49 (which includes $95,703.70 interest) which it paid in February and March, 1955. Thereafter, on October 8, 1956, taxpayer filed this action in the District Court to recover said additional amount so paid, plus statutory interest.[1]

The determining factor in this case is the meaning to be ascribed to the word "stone" as it appears in Section 114(b) (4) (A) (i) of the Revenue Act of 1951 which reads:

"(A) In general. The allowance for depletion under section 23(m) in the case of the following mines and other natural deposits shall be—

"(i) in the case of sand, gravel, slate, stone (including pumice and scoria), brick and tile clay, shale * * * 5 per centum,

\* \* \* \* \* \*

of the gross income from the property during the taxable year * *."

In computing net income for tax purposes Section 23 of the Internal Revenue Code of 1939 [2] makes provision for deduc-

---

1. Taxpayer's original action included claims for additional amounts, which were paid as result of disallowance of other deductions by the Commissioner, but these claims are not involved in this appeal.

2. 26 U.S.C. 1952 Ed., Section 23. "Deductions from gross income. In computing net income there shall be allowed as deductions:

\* \* \* \* \*

"(m) Depletion. In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of im-

provements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. \* \* \* "

For percentage depletion allowable under this subsection, see section 114(b), (3) and (4).

"(n) Basis for depreciation and depletion. The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be as provided in section 114."

tions which are allowable from gross income. Three basic methods are prescribed by the Code for computing the deduction for depletion: (1) The basis under the general rule;[3] (2) the discovery value basis;[4] and (3) the percentage of income basis.[5]

The general rule provides for computation in the same manner as that prescribed for ascertaining the gain resulting from a disposition or sale of property under Section 113(a) as adjusted pursuant to Section 113(b).[6] Under the discovery value basis depletion deductions are allowable based on the fair market value of the property at the date of discovery or within thirty days thereafter. The depletion allowance for mines and

**3.** 26 U.S.C. 1952 Ed., Section 114(b) (1). The basis upon which depletion is to be allowed in respect of any property shall be the adjusted basis provided in section 113(b) for the purpose of determining the gain upon the sale or other disposition of such property, except as provided in paragraphs (2), (3), and (4) of this subsection.

26 U.S.C. 1952 Ed., Section 113. "Adjusted basis for determining gain or loss—

"(a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that—

\*   \*   \*   \*   \*

"(b) Adjusted basis. The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided."

**4.** 26 U.S.C. 1952 Ed., Section 114(b) (2). (As amended by Section 319(b) of the Revenue Act of 1951, c. 521, 65 Stat. 452.) Discovery value in the case of mines. In the case of mines (except mines in respect of which percentage depletion is allowable under paragraph (4) of this subsection) discovered by the taxpayer after February 28, 1913, the basis for depletion shall be the fair market value of the property at the date of discovery or within thirty days thereafter, if such mines were not acquired as the result of purchase of a proven tract or lease, and if the fair market value of the property is materially disproportionate to the cost. The depletion allowance under section 23(m) based on discovery value provided in this paragraph shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property upon which the discovery was made, except that in no case shall the depletion allowance under section 23(m) be less than it would be if computed without reference to discovery value. Discoveries shall include minerals in commercial quantities contained within a vein or deposit discovered in an existing mine or mining tract by the taxpayer after February 28, 1913, if the vein or deposit thus discovered was not merely the uninterrupted extension of a continuing commercial vein or deposit already known to exist, and if the discovered minerals are of sufficient value and quantity that they could be separately mined and marketed at a profit.

**5.** 26 U.S.C. 1952 Ed., Section 114(b) (4) (A). (As amended by Section 319(a) of the Revenue Act of 1951, c. 521, 65 Stat. 452.) (4) Percentage depletion for coal and metal mines and for certain other mines and natural mineral deposits.

"(A) In general. The allowance for depletion under section 23(m) in the case of the following mines and other mineral deposits shall be—

"(i) in the case of sand, gravel, slate, stone (including pumice and scoria), brick and tile clay, shale, oyster shell, clam shell, granite, marble, sodium chloride, and, if from brine wells, calcium chloride, magnesium chloride, and bromine, 5 per centum,

"(ii) in the case of coal, asbestos, brucite, dolomite, magnesite, perlite, wollastonite, calcium carbonates, and magnesium carbonates, 10 per centum,

"(iii) in the case of metal mines, aplite, bauxite, fluorspar, flake graphite, vermiculite, beryl, garnet, feldspar, mica, talc (including pyrophyllite), lepidolite, spodumene, barite, ball clay, sagger clay, china clay, phosphate rock, rock asphalt, trona, bentonite, gilsonite, thenardite, borax, fuller's earth, tripoli, refractory and fire clay, quartzite, diatomaceous earth, metallurgical grade limestone, chemical grade limestone and potash, 15 per centum, and

"(iv) in the case of sulfur, 23 per centum,

of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property.

\*   \*   \*"

**6.** Footnote 3 supra.

other natural deposits based upon percentage of income, provides specific percentages to be allowed on various classifications of materials.

In the early Revenue Acts, the general rule was the only method provided for the computation of depletion. Later Acts have provided for exceptions to the general rule until at the present time the exceptions may be said to have become the rule. Prior to 1951 stone was not included in any of the specific classifications but under Section 114(b) (4) (A) (i) of the Revenue Act of 1951 [7] Congress provided a five per cent rate of depletion based on gross income, for a number of materials including stone. There is no specific provision for gypsum, designated by that name, either in the five per cent classification or in other classifications of materials which are granted percentage depletion. Taxpayer contends that gypsum is within the meaning of "stone" as used in the 1951 Act. Appellant contends that "stone" as used in said Act does not include gypsum but is confined in its meaning to stone that is useful for construction purposes by reason of its physical characteristics.

Treasury Regulation 111 promulgated under the Internal Revenue Code of 1939, as amended July 14, 1953,[8] defines "stone" as the word is used in the Act, according to appellant's contention, and Revenue Ruling 55–67 of the Internal Revenue Service dated February 7, 1955 [9] by specific language excluded gypsum from the definition given the word "stone" as used in Section 114(b) (4) (A) (i).

Appellant contends that the word "stone" as used in said section of the Code, was intended to denote a particular and limited class of materials which are customarily used in the construction industry for their physical properties, and commonly designated "stone" by persons in that industry; that Congress did not intend to include gypsum which is used primarily for its chemical properties in a number of specialized products, and which is not commercially and commonly referred to as "stone" by members of the construction industry. Appellant contends that the District Court committed error in that it failed to sustain its contention as to the limited meaning of the word "stone".

As shown in Footnotes 8 and 9 to this opinion the United States by Treasury Regulation No. 111, amended July 14, 1953, defined the word "stone" as "all common dimension, crushed or broken stone within the ordinary meaning of these terms" and by Revenue Ruling published February 7, 1955 specifically excluded gypsum from the reach of the word "stone" except when used or sold for use as "stone" as the word is used in the regulation.

Appellant argues that the word "stone" has more than one meaning and therefore is ambiguous and requires an administrative interpretation; United States v. Allen-Bradley Company, 352 U.S. 306, 77 S.Ct. 343, 1 L.Ed.2d 347; Commissioner of Internal Revenue v. South Texas Lumber Company, 333 U.S. 496, 68 S.Ct. 695,

7. Footnote 5 supra.

8. Treasury Regulation 111. Section 29.23 (m)–5 (as amended by T.D. 6031, July 14, 1953. "Computation of depletion based on percentage of income in case of certain mines or other natural deposits.

    *     *     *     *     *

"For the purposes of this section (114 (b) (4) (A)) the minerals indicated below shall have the following meanings:

    *     *     *     *     *

"Stone—All common dimension, crushed or broken stone within the ordinary meaning of these terms. * * *"

9. Revenue Ruling 55–67 (1955–1. Cum. Bul. p. 357, February 7, 1955.)

"Gypsum, in its natural state, is a mineral which may occur in rocklike masses but is very soft and rarely mined or used as stone for ordinary commercial purposes. It is not to be classified as 'stone', as that term is used in section 114(b) (4) (A) (i) of the Internal Revenue Code of 1939 (as amended by Section 319 of the Revenue Act of 1951) and section 39.23(m)–5(b) of Regulation 118, unless it is used, or sold for use, by the mine owner or operator as 'stone' as defined in such regulations."

92 L.Ed. 831; Unemployment Compensation Commission v. Aragon, 329 U.S. 143, 67 S.Ct. 245, 91 L.Ed. 136; also that it involves subject matter both technical and complex requiring that legislative detail be supplied; Helvering v. Wilshire Oil Company, 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101; United States v. Allen-Bradley Company, supra; Commissioner of Internal Revenue v. South Texas Lumber Company, supra; Unemployment Compensation Commission v. Aragon, supra. Appellant takes the still further position that said Treasury Regulations constitute contemporaneous constructions by those charged with administration of the Internal Revenue laws and should not be overruled except for weighty reasons. Commissioner of Internal Revenue v. South Texas Lumber Company, supra; Augustus v. Commissioner of Internal Revenue, 6 Cir., 118 F.2d 38, certiorari denied 313 U.S. 585, 61 S.Ct. 1095, 85 L.Ed. 1540.

Based on the foregoing authorities appellant insists that the District Court erred in concluding that gypsum is included in the category of "stone" under Section 114(b) (4) (A) (i) of the Internal Revenue Code of 1939, and in holding that taxpayer is, therefore, entitled to a deduction or percentage depletion.

Taxpayer does not quarrel with the general principles relied upon by appellant but disputes their applicability here. Taxpayer denies the right of the appellant to select a narrow, limited meaning of the word "stone" from among the common ordinary meanings it has been given; says there is nothing in the legislative history of the statute and nothing in the apparent purpose of the statute which justifies the rejection of other common ordinary meanings of the word "stone" in favor of the narrow meaning selected by appellant; that by such rejection appellant exercised legislative power contrary to law; that the word "stone" as used is not so ambiguous in meaning as to justify the Treasury Ruling excluding gypsum from the benefit of the statute and that neither the Regulation amended July 14, 1953 nor the

Ruling thereon under date of February 7, 1955 was sufficiently contemporaneous with the effective date of the statute as to lend either any force as a contemporaneous interpretation by the administrative agency charged with responsibility for its administration.

Pursuant to the narrow interpretation of the word "stone" the Commissioner denied taxpayer a five per cent depletion deduction and having paid the tax assessed taxpayer sought recovery of same by suit in the District Court. By stipulation the facts were generally removed from dispute leaving in controversy only the issue as to whether or not taxpayer's mineral deposits of gypsum are stone deposits or deposits from which stone is extracted, within the meaning of Section 114(b) (4) (A) of the 1939 Internal Revenue Code, as amended by the Revenue Act of 1951.

To support its contention that gypsum is within the ordinary meaning of "stone" as used in the statute taxpayer produced eight witnesses of wide and varied experience in the fields of geology and in the mining and quarrying of non-metallic mineral deposits who testified that taxpayer's mineral deposits were natural stone deposits; that the principal stone deposits in this country are deposits of limestone, gypsum, granite, sandstone, marble, slate, shale and soapstone; and that the product of plaintiff's mines and quarries is known as "crushed stone".

The testimony of these witnesses was also to the effect that gypsum usually occurs in solid ledges like limestone and is mined or recovered like other stone by blasting and by repeated crushings until it becomes "crushed stone"; that persons engaged in the business of extracting and crushing gypsum are recognized as being engaged in the stone industry.

Taxpayer's witnesses also testified that the term "stone" was not limited by the uses to which the product was put after being crushed whether for its physical or chemical properties; that limestone is the most versatile stone and its chemical uses are more significant than its physical

uses; that limestones are sometimes softer than some gypsum and some gypsum is much harder than many limestones; that many deposits of minerals are used for both physical and chemical purposes such as shale, clamshell, dolomite, pumice and many others.

The United States introduced three witnesses, two engaged in the teaching profession, one in the field of geology, and one in the field of civil engineering. The latter was also in charge of a concrete materials laboratory. The third witness was employed in the Natural Resources Section of the Engineering and Valuation Branch of Internal Revenue Service and prior thereto had worked for companies engaged in mining gold and silver and for fifteen years with Eagle-Picher Lead Company as its tax man. This witness had assisted in the preparation of the Revenue Ruling here involved and was familiar with Regulation 111, as amended. Each of the Government's witnesses testified that gypsum is classified as a mineral or rock but not as a stone; that stone does not include gypsum whether from an economic or a geologic viewpoint; that stone includes materials used for construction purposes such as concrete aggregate, rip-rap, railway ballast and other similar uses or for building purposes but does not include gypsum which is not so used but is mainly used for its chemical qualities.

The Court found from the evidence that the word "stone" has different connotations to different persons. To persons engaged in mining and quarrying of natural mineral deposits it has a broad meaning and includes gypsum. To a builder or contractor the meaning of "stone" is limited to conform to its use in that field by reason of its physical qualities. A person in the cement business might speak of stone as shale, limestone or gypsum which are the kinds of stone he uses; a person in the steel business might think of stone as flux stone and one in the monument business as granite or marble which he uses in the monumental trade.

The District Court further found that natural mineral deposits of gypsum are stone deposits as commonly understood by persons engaged in the business of mining and quarrying natural non-metallic mineral deposits and by mining and quarrying stone is extracted from taxpayer's natural deposits of gypsum; that the product of taxpayer's mines and quarries after secondary crushing is known as "crushed stone" to persons engaged in mining and quarrying of natural non-metallic mineral deposits; that gypsum is one of the stones most commonly mined or quarried in this country and the taxpayer through its mining and quarrying of natural gypsum is recognized and considered to be part of the "stone industry" or "crushed stone industry"; that by such mining and quarrying taxpayer's natural mineral deposits are depleted.

As conclusions of law the District Court held that the word "stone" as used in the Act in question, as amended, was intended to have its commonly understood meaning to persons engaged in or connected with the mining and quarrying of natural non-metallic mineral deposits and not to have the limited meaning that might be given it by a particular type of consumer or user; that given the former meaning taxpayer's deposits of gypsum are deposits of stone from which stone is extracted, within the meaning of said Act, as amended. The Court further held that taxpayer produces crushed stone from its deposits of gypsum within the proper meaning of Regulation 111 of the Treasury Department amended July 14, 1953.[10] The Court further held that Revenue Ruling 55-67 of the Internal Revenue Service dated February 7, 1955 [11] is contrary to the plain meaning of the term "stone" as used in the Act, as amended, and is therefore unreasonable and void; that if the Treasury Department Regulation 111, amended July 14, 1953, is construed as indicated by Revenue Ruling

10. Footnote 8 supra.

11. Footnote 9 supra.

55–67 then the Regulation is contrary to the plain meaning of the word "stone" as used in said Act, as amended, and is therefore unreasonable, void and of no effect.

Based on its findings and conclusions the Court held that plaintiff is entitled to a deduction of five per cent from gross income for the year ending December 31, 1951 for depletion of its natural mineral deposits and returned judgment in favor of the taxpayer.

■ The findings of the District Court have abundant support in the evidence and we are constrained to agree with that Court's conclusions of law. We find nothing in the legislative history of the Act which supports the view that the word "stone" was intended to be used in the single, narrow, restricted sense given it in the building and construction business. Examination of the language of the statute indicates that the Congress when using a word in a narrowly restricted sense used restrictive terminology as "brick and tile clay" in the five per cent classification and "refractory and fire clay" in the fifteen per cent classification. "Stone" is not restricted in meaning by any descriptive term such as "building" stone but on the other hand not only stands alone, unrestricted, but is broadened by the parenthetical provision that "stone" shall include pumice and scoria which by reason of their loose formations might otherwise have been considered as outside the meaning of "stone".

■ We agree with the District Court that if Regulation 111, as amended, is given the meaning expressed in Revenue Ruling 55–67 which limits the word "stone" to mean only stone used for its physical properties, both the Regulation and the Ruling are unreasonable, void and of no effect. Manhattan General Equipment Company v. Commissioner of Internal Revenue, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528; Burnet v. Chicago Portrait Company, 285 U.S. 1, 21, 52 S.Ct. 275, 76 L.Ed. 587.

■ It is well established that in interpreting the meaning to be given words used in legislative enactments the words are to be given their known and ordinary signification. The obvious, plain and rational meaning is preferable to a narrow, strained, or hidden meaning. Old Colony R. Co. v. Commissioner of Internal Revenue, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484; Torti v. United States, 7 Cir., 249 F.2d 623.

■ The purpose of the depletion provisions of the Code was stated recently by the United States Court of Appeals in the First Circuit in an opinion involving the question of gross income under Section 114(b) (4), Dragon Cement Company v. United States, 1 Cir., 244 F.2d 513, 516, in the following language:

" * * * depletion allowance is not an allowance on any process, whether a mining process or a manufacturing process. Nor is it an allowance, as such, upon any product. Instead, it is an allowance to the mine owner designed as a simple means to diminish his taxable income from the exploitation of a natural resource which is necessarily exhausted in the process."

There can be no question but taxpayer's gypsum deposits are depleted by their exploitation and are necessarily becoming exhausted in the process. We approve the findings of the District Court from the evidence in the record that taxpayer's gypsum deposits are deposits of stone from which stone is extracted and the conclusions of the court that the stone so extracted by taxpayer is stone within the meaning of that term as used in the statute. When viewed in the light of the purpose of the depletion allowance it seems clear that the taxpayer should be allowed the depletion deduction as claimed.

Judgment affirmed.