CENTRAL COMMERCIAL COMPANY, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 14605.

United States Court of Appeals Seventh Circuit.

Oct. 22, 1964.

2. United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952); and see the language of § 2255 itself.

Harry D. Orr, Jr., William P. Sutter, Chicago, Ill., for petitioner, Hopkins, Sutter, Owen, Mulroy, Wentz & Davis, Chicago, Ill., of counsel, for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Tax Division, Melva M. Graney, Lee A. Jackson, Michael Mulroney, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before CASTLE, KILEY and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

The sole contested issue presented by this petition filed by Central Commercial Company to review decisions of the Tax Court confirming income tax deficiencies determined against petitioner for the years 1954 to 1958 inclusive is whether the petitioner's basalt deposit, which is of such quality it is quarried and used solely in the production of roofing granules,[1] is entitled to a percentage depletion deduction at the 15% rate provided for "all other minerals" rather than at the 5% rate provided for "stone" as those terms are used in Section 613(b) of the Internal Revenue Code of 1954 (26 U.S. C.A. § 613(b)). The deficiencies were assessed on the basis the 5% rate is applicable. Petitioner contends the Tax Court erred in confirming the Commissioner's determination and should have held the 15% rate applicable.

The record discloses that generically basalt is a mineral. More specifically it is a traprock—a species of rock. In its ordinary commercial sense the word "stone" refers to material quarried or broken loose from a deposit of rock. Thus while petitioner's basalt deposit is a "mineral" it is also a "stone" as the latter term is used in its ordinary commercial sense.

The statutory provision here involved relates to the depletion allowance granted to mining or quarrying operations—the extraction of mineral deposits. It is evident from the subject matter and the context of Section 613 that the word "stone" as used therein (§ 613(b)) refers to a rock deposit. And legislative history and judicial approval indicate that Congress in enumerating the various minerals in the statute employed the names and terms used in their commonly understood commercial meaning. Vulcan Materials Company v. Sauber, 7 Cir., 306 F.2d 65, 67.

The portion of the section here pertinent first provides (§ 613(b) (5)) for a 5% depletion allowance for:

" * * * stone, except stone described in paragraph (6); * *."

and then in paragraph (6) provides for a 15% depletion allowance (§ 613(b) (6)) for:

" * * * all other minerals (including, but not limited to, aplite, barite, borax, calcium carbonates, refractory and fire clay, diatomaceous earth, dolomite, feldspar, fullers earth, garnet, gilsonite, granite, limestone, magnesite, magnesium carbonates, marble, phosphate rock, potash, quartzite, slate, soapstone, stone (used or sold for use by the mine owner or operator as dimension stone or ornamental stone), thenardite, tripoli, trona, and (if paragraph (2) (B) does not apply) bauxite, beryl, flake graphite, fluorspar, lepidolite, mica, spodumene, and talc, including pyrophyllite), except that, unless sold on bid in di-

---

1. Not all basalt deposits are of a quality suitable for such use. Those that are are more valuable. The requirements, as to both chemical and physical characteristics, which a deposit must meet to qualify for use as roofing granules are more rigid than those which qualify it for use as riprap, ballast, road material, rubble, concrete aggregate, and other similar purposes.

rect competition with a bona fide bid to sell a mineral listed in paragraph (3), the percentage shall be 5 percent for any such other mineral when used, or sold for use, by the mine owner or operator as rip rap, ballast, road material, rubble, concrete aggregates, or for similar purposes. * * *."

It is evident from the arrangement and context of § 613(b), as well as from its legislative history, that when Congress intended to provide for a specific mineral or a particular species of stone it did so; and when the character of use to which the stone was put was to control the percentage allowance, Congress said so.

Thus, when after fixing a 5% depletion allowance for stone, generally, (and recognizing that certain exceptions thereto were to be made thereafter in paragraph (6)) Congress provided a greater (15%) allowance in paragraph (6) for all *other* minerals but included certain species or types of stone it expressly enumerated the latter by name. The exclusion of stone (for which provision had already been made in paragraph (5)) from the purview of paragraph (6) by use of the words "other minerals" was partially lifted to accommodate certain specifically named stone or rock deposits as well as deposits producing stone used or sold for use as dimension or ornamental stone. But basalt is nowhere expressly mentioned in § 613. As a species or type of "stone" it does qualify for the depletion allowance granted in paragraph (5). Being thus provided for it is not an "other mineral" within the scope of paragraph (6) nor is it specifically included therein by name or other designation. And petitioner's product is not used or sold for use as dimension stone or ornamental stone.

▮ It is a cardinal principle of statutory construction that the more specific controls over the general. Basalt, although a mineral, falls within the more specific category of "stone" which is a category dealt with in paragraph (5) and is therefore controlled thereby rather than by the subsequent reference to "all other minerals". And petitioner's basalt deposit is not removed from the ambit of paragraph (5) by anything contained in paragraph (6).

Whatever basis for a claim of ambiguity may be predicated upon the "including but not limited to" phraseology immediately preceding the enumeration made in paragraph (6) is completely dispelled by the intent of Congress as evidenced by the Senate Finance Committee Report (S.Rep.No.1622, 83d. Cong., 2d Sess., pp. 78–79) wherein it is explained:

"Your committee has also modified the treatment of various types of stone. This is done by placing stone in the general class of all other minerals when used, or sold for use as dimension or ornamental stone. * * * Under your committee's bill the 5 percent rate will be applicable to stone when used or sold for use by the mine owner or operator *for purposes other than* dimension stone and ornamental stone." U.S.Code Congressional and Administrative News, p. 4710. (Emphasis added)

Petitioner's contentions appear to be premised, for the most part, on the proposition that the word "stone" as used in paragraph (5) is limited in application to rock deposits producing common "crushed stone". But neither the natural import of the language used, its commonly understood commercial meaning (Vulcan Materials Company v. Sauber, supra), nor the legislative history of the provision support such a conclusion.[2]

We have considered, although we have not extended the scope of this opinion to discuss, all of the arguments advanced by the petitioner in support of its position, together with the cases and authorities cited and relied upon in connection

2. Cf. United States Gypsum Co. v. United States, 7 Cir., 253 F.2d 738.

therewith. We are not persuaded thereby.

The decisions of the Tax Court are affirmed.

Affirmed.