Per Curiam:
This case was referred pursuant to Rule 57(a) to Trial Commissioner Richard Arens with directions to make findings of fact and recommendation for a conclusion of law. The commissioner has done so in an opinion and report filed on June BO, 1964. Defendant has filed exceptions to the commissioner’s report, briefs were filed by the parties and the case was submitted to the court on oral argument of counsel. Since the court is in agreement with the findings, opinion, and recommended conclusion of law of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is therefore entitled to recover on his claim and defendant is entitled to recover on its counterclaim, and judgment is entered to that effect with the amounts of recovery to be determined pursuant to Rule 47(c).
*721 OPINION OF COMMISSIONER
Plaintiff, an employee at the Army Depot (hereinafter generally referred to as the depot) at Tobyhanna, Pennsylvania, contends that by reason of the rate of pay in his prior Government service and an understanding he claims he had with defendant’s personnel officer at the time of his reinstatement at the depot, he was entitled to a rate of pay higher than the rate allowed at the time of his reinstatement. He accordingly seeks to recover an amount representing retroactive adjustment in salary.
Defendant, in addition to contravening plaintiff’s claim, seeks to recover on its counterclaim an amount representing an alleged overpayment to plaintiff arising out of an error which defendant claims it made in computing an increase in plaintiff’s pay. The amount of recovery, if any, is reserved for further proceedings.
In September 1946, plaintiff resigned his position with the Federal Government at the Rome Army Air Depot in New York because of an imminent reclassification and reduction in compensation. At the time of his resignation he held the position of carpenter (Wage Board), grade 12, step 5.
After 10 years’ non-Governmental employment, plaintiff, in August 1956 and again in September 1956, filed with the depot personnel office standard form 57 applications for Federal employment, in each of which he made reference to his previous Government employment, and in one of which he set forth the specific (Wage Board) grade he had held at the time of his resignation. One of the applications was accompanied by a letter in which he noted that he was “a former Civil Service employee, with re-employment right.”
In November 1956, Mr. Willard Lamson, a personnel officer at the depot, having received a request (standard form 52) from the chief of one of the divisions for a file clerk to be employed at Civil Service grade 2, conferred with plaintiff respecting the position. Mr. Lamson had been employed at the depot only about a month, but had prior experience as a Government personnel officer. At the time of the conference, *722 plaintiff’s records of past employment with the Government were at the Army Kecords Center in St. Louis, Missouri.
At the trial, plaintiff testified that at the conference Mr. Lamson told him in effect that he would be reinstated in the position of file clerk at the lowest step in grade 2, but that in accordance with the depot policy, upon verification of his past employment with the Government, he would be accorded the highest rate which he had previously held. Mr. Lamson testified that he did not recall making the foregoing statements, but that “it was possible that we may have come to this understanding.” He added that under the practice and regulations at the depot, “generally speaking” the highest previous rate is accorded upon reinstatement of a former Government employee “whenever possible;” but, that it is not “a mandatory thing.”
On November 16, 1956, plaintiff became reinstated at the depot as file clerk, Civil Service grade 2, step (a), at a salary of $2,960 per annum. Step (a) was the lowest step in grade 2 and was below the highest rate which plaintiff had previously held. The highest rate at which plaintiff could have been reinstated on the basis of the highest rate which he had previously held was grade 2, step (g), at a salary of $3,470 per annum.
During or shortly after his conference with plaintiff, Mr. Lamson made insertions in handwritten notations on the standard form 52, request for a file clerk. These notations included plaintiff’s name, the nature of the action, “Bein-statement (Career),” and the step and salary. Under item 20, remarks, Mr. Lamson inserted “Substantially continuous creditable service from 1-27-42 to 9-13-46.” The essence of this information was transposed to a personnel action standard form 50 and approved by the chief of the personnel branch.
Applicable Department of the Army Civilian Personnel Kegulations, CPE P3 — Basic Pay Bates, provide that “The policy is to preserve, to the maximum extent possible, an employee’s last earned rate of pay” in certain cases, including former employees of the Army establishment; and that if in any such case an appointing officer fixes the employee’s rate at less than his last earned rate, “the employee will be fur *723 nished a complete explanation of the reasons for the action.”
The regulations further provide (CPE P3, 1-6):
* * * If decision is made to afford an employee the benefit of a former rate of pay but it is not possible to obtain verification of that rate prior to effecting the action, the action may be processed at the minimum step rate of the grade, subject to upward adjustment. In such cases, a statement to that effect must be recorded on the Standard Form 50 (Notification of Personnel Action) * * *. Observance of this procedure will provide a basis for retroactive adjustment of the pay rate through issuance of a correction Standard Form 50 * * *. Failure to place a qualifying statement on the Standard Form 50 effecting the original action will preclude adjustment until such time as another personnel action is effected, unless there is other antedated documentary evidence which shows the intent of the appointing officer to pay the higher rate to the individual employee concerned.
In the instant case no explanation was furnished plaintiff, in accordance with the regulations, of the reasons why he was not being given the benefit of his highest previous rate (if such benefit was not to have been granted); nor was there recorded on the standard form 50, in accordance with the regulations, a statement to the effect that plaintiff was afforded the benefit of a former rate of pay, but that the action was processed at the minimum step rate of the grade, subject to upward adjustment.
When plaintiff’s records of past employment with the Government were received at the depot from the Army Eecords Center, they were not brought to the attention of Mr. Lam-son, the personnel officer who had processed plaintiff’s reinstatement; nor, was any checking made of these records to verify the highest rate which plaintiff had previously held.
As a result of the conference with Mr. Lamson at the time of his reinstatement in 1956, plaintiff was aware of the policy of the depot regarding reinstatement of employees, but it was not until the fall of 1959 that he learned, through conversation with a fellow employee, of the Army regulations on the subject. Plaintiff then made inquiry at the personnel office of the depot and Mr. Lamson advised him that an error had been committed in his case, but that plaintiff would receive any amount that was due him. Subsequently, Mr. Lamson *724 advised plaintiff tliat some “technicalities” had been encountered in the matter.
In January 1960, the commander of the depot advised the chief signal officer of the Army that at the time of plaintiff’s reinstatement the “statement relative to rate of pay being subject to adjustment upon verification of prior service was erroneously omitted,” and recommended that retroactive pay adjustment for plaintiff be approved. A responding memorandum from the office of the chief signal officer reads:
In the absence of a qualifying statement on the Standard Form 50 or of any antedated documentary evidence showing the intent of the appointing officer to pay a higher rate than that established on the effective dates of the actions in question, retroactive adjustment may not be effected.
In March 1960, the commander of the depot requested reconsideration by the chief signal officer and stated that:
* * * it has been the policy of this depot since its establishment, to set the rate of pay in processing all actions at the maximum rate permissible under existing regulations and the maximum rate was not given in this case due to administrative error.
The foregoing language was transposed from a “Coordination Sheet,” circulated at the depot and initialed by six officers, including the legal officer and Mr. Lamson who had processed plaintiff’s reinstatement. In response, however, the office of the chief signal officer reasserted its position that “retroactive adjustment of pay cannot be effected unless there is a qualifying statement on the Standard Form 50 or other documentary evidence which shows the intent of the appointing officer to pay higher rate.”
In May 1960, plaintiff wrote to the United States Civil Service Commission concerning retroactive adjustment in his pay rate. The reply letter stated that if an administrative error was made in plaintiff’s case corrective action could be taken by the agency concerned to adjust plaintiff’s pay retroactively, but that the Commission had no authority to do so. The Commission suggested that plaintiff pursue the matter with the General Accounting Office.
In the fall of I960, plaintiff submitted a claim to the Gen-- *725 eral Accounting Office for retroactive adjustment of bis salary, but it ivas disallowed. The letter of disallowance stated:
Regardless of evidence that the established unwritten policy of the depot was to process all actions at the maximum, rate permissible under the regulations, the complete absence of any evidence of intent to fix rates other than those appearing on the Form 50 negates the idea of administrative error or a contrary intent by the administrative official to consider the employee’s former higher salary rate.
From the entire record in the case, the conclusion is inescapable that at the time of plaintiff’s reinstatement on November 18, 1956, it was understood by the parties that defendant would accord plaintiff the highest rate which plaintiff had previously held, and that but for administrative error plaintiff would have been accorded such rate retroactively to the date of his reinstatement upon confirmation of his records of past employment. (See finding 21.) The administrative error, repeatedly referred to by defendant’s agents, was, of course, the failure of Mr. Lamson, the personnel officer, to make a notation on the standard form 50 as prescribed by the regulations.
Unfortunately there were other administrative errors committed in the case. In March 1961, plaintiff and another employee who had a similar position in the depot, at the request of their superior officers, consented to exchange positions for purposes of cross-training. In the process of the exchange it was determined that plaintiff would be afforded the benefit of his highest previous rate, but without regard to any error committed at the time of his reinstatement. In converting plaintiff’s Wage Board rate, which he had during his previous Government employment, to the then “current equivalent” classified rate, Mr. Lamson, the personnel officer, made an administrative error and fixed plaintiff’s rate higher than the rate to which he could have been entitled under the conversion tables. This administrative error was subsequently compounded at the time of various step increases which plaintiff received.
In July 1983, after discovery of the error made in March *726 1961, action was taken to correct plaintiff’s salary retroactively to the time of the exchange of positions. In its counterclaim, defendant seeks to recover the difference between the amount of salary which plaintiff would have received if the administrative error of March 1961 had not been made and the amount which plaintiff did receive until the time of the corrective action.
We come then to the consideration of the legal implications of the administrative error made by Mr. Lamson, the personnel officer, in failing to make the prescribed notation on the standard form 50 at the time of plaintiff’s reinstatement. If Mr. Lamson had made the prescribed notation, admittedly, plaintiff’s rate of pay would eventually have been retroactively adjusted to afford him the benefit of his former rate. In the light of the conclusion, already reached, that at the time of plaintiff’s reinstatement it was understood by the parties that defendant would, following the necessary verification, accord plaintiff the highest rate which he had previously held, it is clear that Mr. Lamson should have made the prescribed notation. That he did not do so was obviously no fault of plaintiff. The insertion of the notation would not have been a matter of discretion, but was purely a ministerial act, required by the regulations, after consummation of the employment agreement. Under these circumstances, it is appropriate for this court, which has consistently asserted its general equity power, to “regard that as done which ought to have been done” and, accordingly, to deem the ministerial act to have been performed in accordance with the regulations.
Although no cases have been cited by the parties which are substantially the same in facts as the instant case, a number of decisions of this court point the direction which should be followed.
In Wickes v. United States, 123 Ct. Cl. 741, 108 F. Supp. 616 (1952), the court was confronted with a situation in which the chairman of the War Production Board did not issue the plaintiff a “necessary certificate” on certain property which became involved in tax litigation. His reason for not doing so was because of the provisions of a regulation which the court found to be invalid. In the course of its opinion (loc. (At. 749), the court stated:
*727 * * * Equity regards that as done which ought to have been done. We do not have here the problem of deciding, contrary to the decision of the official in which the statute lodged the power of decision, that the facilities in question were necessary. He decided that they were. We merely append the proper legal consequences to his decision by disregarding the invalid regulation which prevented him from putting his factual decision in legal form. * * *
In Ward W. Caddington v. United States, 147 Ct. Cl. 629, 178 F. Supp. 604 (1959), the Army Board for the Correction of Military Records found that under an Army Terminal Leave Promotion Policy the plaintiff possessed all the qualifications for promotion to the grade of full colonel and recommended that his record be corrected to show such promotion, but stipulated that no additional retired pay should be awarded plaintiff on the basis of such promotion. In granting plaintiff’s motion for summary judgment, the court {loo. cit. 634) stated:
* * * By every principle of equity and fair dealing we know anything about, either from reading or experience, plaintiff is entitled to the benefits of a record that is only slightly incomplete, due wholly to circumstances that were no fault of his own.
There are certain principles of equity that through long usage have grown into maxims. These include “equity regards that as done which ought to be done;” “equity will not suffer a wrong to be without a remedy “equity regards substance rather than form;” “equity delights to do justice and not by halves.”
We believe that plaintiff’s case falls within each of these maxims. These maxims, founded in justice and based on human experience, are among the proud traditions of Anglo-Saxon jurisprudence.
We believe that the Board for the Correction of Military Records and the Secretary who approved the findings reached a conclusion that falls short of complete justice. This is not to say that there wás any intention to deny plaintiff any of his rights but the effect was just the same.
We hold, therefore, on the facts admitted by the briefs and pleadings, that plaintiff ought to have been promoted to full colonel during his tour of active duty and under no circumstances later than September 17, 1945, the date of his release from active duty. This is not *728 accomplished by simply pinning a badge on the plaintiff without giving him the rights that ordinarily flow from such a promotion.
Under the statute plaintiff’s actual grade of colonel as of the date of his retirement would normally entitle him to retired pay based on a percentage of the pay of a colonel from that date and he should be entitled to recover any difference between that amount and the amount of the retired pay which he has been receiving. * * *
There is an established line of cases in which, when certain elements are present, this court has exercised its equity power to reform written instruments. A typical pronouncement was made by the court in Iowa-Wisconsin Bridge Company v. United States, 114 Ct. Cl. 464, 84 F. Supp. 852 (1949), cert. denied, 339 U.S. 982 (1950), as follows (loc. cit. 504) :
Defendant states that the judgment of the Court of Claims cannot be one of reformation. We do not quite know what defendant means by this statement. Our judgment, if for the plaintiff, will be for a sum of money representing just compensation. It seems to be well established that in a case where a party would have had the legal right to recover money damages from the United States under a written instrument except for the omission by mutual mistake of some essential element from that.written instrument, and where it is clear that both parties intended such element to be included, this court has equitable jurisdiction to reform the instrument so as to express the understanding and intentions of the parties, and for the purpose of determining whether the claim, if established, is a valid one against the United States, and having so determined, to award a money judgment. District of Columbia v. Barnes, 197 U.S. 146; Cramp v. United States, 239 U.S. 221; United States v. Milliken Imprinting Co., 202 U.S. 168. In the instant case there was a mutual mistake in the omission of the reservation relative to the strip across Lot 4 in the deed, both parties having intended that such reservation be included. The mistake has been openly acknowledged and the parties have always acted with respect to the property in accordance with their original intention. For the purpose of holding that plaintiff is entitled to recover just compensation for the earth taken from that portion of the right-of-way, we conclude that plaintiff *729 owns tbe same rights in this portion of the right-of-way as it does in the others previously considered and which were expressly reserved in the deeds covering them.
Iowa-Wisconsin Bridge Company was cited with approval by the court in Jones & Sears, Inc. v. United States, 158 Ct. Cl. 162 (1962), as follows:
* * * * *
It is. clear that both parties intended that this assurance against loss was to be part of the entire agreement, although it was not included in the written contracts. This court has equitable jurisdiction to reform the contract so as to express the understanding and intention of the parties, and for the purpose of determining whether the claim, if established, is a valid one against the United States, and having so determined, to award a money judgment. Iowa-Wisconsin Bridge Company v. United States, 114 Ct. Cl. 464 (1949). * * *
Defendant cites United States v. McLean, 95 U.S. 750 (1877), reversing McLean v. United States, 12 Ct. Cl. 286 (1876), for the proposition that this court lacks authority to fix or adjust salaries which have been established by an executive department in accordance with an act of Congress. In that case, the plaintiff, a postmaster, brought suit for retroactive pay. The Postmaster General was empowered to make adjustments of salary and did so 14% months after plaintiff had commenced work. Plaintiff sought retroactive salary adjustment to the time he commenced work. The Court, without deciding whether or not a readjustment in salary should have been made earlier, held that no judgment could be given for plaintiff because the readjustment was an executive act and that the courts were powerless to perform executive duties or to treat them as performed when they had been neglected. The Court (loc. cit. 753) said:
* * * They [courts] cannot enforce rights which are dependent for their existence upon a prior performance by an executive officer of certain duties he has failed to perform. The right asserted by the claimant rests upon a condition unfulfilled. * * *
The distinction between McLean and the instant case is readily apparent. In McLean, no administrative decision *730 had been made; while, in the case at bar, the administrative decision (to accord the higher rate) had been made, but was not implemented because of administrative error in failing to perform a ministerial act. By granting plaintiff recovery on his claim in the instant case, the court would not be making an administrative decision, but would be merely giving effect to an administrative decision which had already been made.
Defendant cites other cases in support of the same general proposition that the judiciary may not make administrative decisions. In Keim v. United States, 177 U.S. 290 (1900), the Supreme Court ruled that the Court should not determine under the facts therein presented the question of an employee’s fitness to serve the Government since this was an administrative function. In Donnelly v. United States, 133 Ct. Cl. 120, 134 F. Supp. 635 (1955), the court observed that “appointment is an executive function, involving the exercise of executive discretion” and accordingly dismissed plaintiff’s petition in which he claimed he should have been promoted. In Goldstein v. United States, 131 Ct. Cl. 228, 130 F. Supp. 330, cert. denied, 350 U.S. 888 (1955), plaintiff contended that he was entitled to a special service assignment under a pre-enlistment covenant. In considering plaintiff’s claim for additional pay, the court (loc. cit. 332) said:
* * * Later admissions by the Army that plaintiff may have been mis-assigned do not constitute such an agreement as would entitle plaintiff to recover by suit the pay of a higher rank or grade. Nor can this court undertake to grant plaintiff promotions or assignments which the Army having jurisdiction over him decided not to make. * * *
By allowing plaintiff’s claim in the case at ‘bar, the court would not be performing an executive task in violation of the principles announced in the cases cited by defendant. On the contrary, what the court would be doing in effect would be to say to the administrative agency, “You and plaintiff intended and concluded that he was to receive the higher rate of pay. Subsequently, you inadvertently erred in not making a notation on a form so that this decision *731 could be effected. We will deem that to have been done which you ought to have done.”
The facts clearly show that defendant has just as good a case for its counterclaim because of erroneous salary over-payments arising out of the administrative error of March 1961 as plaintiff has for his claim. Under comparable facts, the courts have held that the Government has a right to recover payments erroneously made. See Wisconsin Central Railroad Company v. United States, 164 U.S. 190 (1896); Western Pennsylvania Horological Institute, Inc. v. United States, 146 Ct. Cl. 540 (1959).
It is accordingly recommended that judgment be entered for plaintiff on his claim and for defendant on its counterclaim, with the net amount of such recovery to be reserved for further proceedings.
FiNdings of Fact
1. (a) Plaintiff is a citizen residing in the State of Pennsylvania where he is employed by the United States at the Army Depot (hereinafter generally referred to as the depot) at Tobyhanna, Pennsylvania.
(b) Plaintiff claims an amount representing retroactive adjustment in salary allegedly due him. He contends that by reason of the rate of pay in his prior Government service and an understanding he had with defendant’s personnel officer he was entitled to a rate of pay higher than the rate allowed at the time of his reinstatement at the depot.
(c) Defendant, in addition to contravening plaintiff’s claim, seeks to recover on its counterclaim an amount representing an alleged overpayment to plaintiff arising out of an error which defendant contends it made in computing an increase in plaintiff’s pay.
(d) The amount of recovery, if any, is reserved for further proceedings.
2. (a) In January 1942, plaintiff became employed by the United States at Middletown Air Base, Middletown, Pennsylvania. About a year later, he transferred to and became employed at the Rome Army Air Depot at Rome, New York.
*732 (b) On September 13, 1946, be resigned his position at Rome Army Air Depot because of an imminent reclassification and reduction in compensation. At the time of his resignation he held the position of carpenter (Wage Board), grade 12, step 5, with a salary of $1.20 per hour.
(c) During the period from September 1946 until November 1956, plaintiff engaged in non-governmental employment.
3. (a) On August 23, 1956, plaintiff filled out a standard form 57, Application for Federal Employment, which he filed with defendant for the position of clerk at the depot. In listing his prior employment he included his previous employment at Middletown Air Base and the Rome Army Air Depot.
(b) On September 15, 1956, plaintiff filled out another standard form 57, Application for Federal Employment, which he also filed with defendant for the position of clerk at the depot. In listing his prior employment he repeated the above reference to his previous employment at Middletown Air Base and the Rome Army Air Depot. Question 13 on the form 57 read: “If you have ever been employed by the Federal Government, indicate last grade.” Plaintiff filled in the following: “GRADE 12. Step.” In responding to item 14.A., which called for an indication of the lowest salary the applicant would accept, plaintiff inserted “Prevailing Rate.” Plaintiff did not respond to item 14.B., which called for the lowest grade the applicant would accept.
4. (a) Under date of October 10, 1956, the chief of the stock control division of the depot filled out pertinent parts of standard form 52, Request for Personnel Action, in which request was made for a file clerk for the division at (Civil Service) grade 2.
(b) By letter dated October 23, 1956, plaintiff wrote to defendant at the depot as follows:
Dear SiR:
Oct. 23, 1956.
I am submitting an application for employment at your installation. Although my application states position desired as Clerical Work, I am willing to accept any position offered for which I may qualify. Because I am a. former Civil Service employee, with re-employment right I am desirious [sic] of locating as close to home as *733 possible. Please give my application as much consideration as possible. I will be very glad to furnish any information you may desire. I would appreciate an interview if possible, whereby I may state more clearly my qualifications.
Hoping to hear favorably in this matter,
I am
Rat P. BiaNCO

150 Butler St.

' Pittston, Pa.
/5. (a) On or about November 16,1956, plaintiff conferred at the depot with Mr. Willard PI. Lamson, employee utilization representative, who was authorized to process the appointment of plaintiff to the position of file clerk, grade 2, in accordance with the request from the chief of the stock control division. It was Mr. Lamson’s responsibilty to determine initially the rate (step) within grade 2 at which plaintiff, as an applicant for the position, would be reinstated. Mr. Lamson had been employed at the depot only about a month at the time of the conference, but had prior experience as a Government personnel officer.
(b) At the trial plaintiff testified that at the time he conferred with Mr. Lamson, plaintiff’s records of past employment with the Government were at the Army Records Center in St. Louis, Missouri; that Mr. Lamson told him that it was the policy upon reinstatement of former Government employees to accord them the highest rate which they had previously held; that he would be reinstated to the position of file clerk, grade 2, step (a), the lowest step, but that if his records, which would be requested from the Army Records Center, “proved that a higher rate was warranted,” he would receive it.
(c) Mr. Lamson testified that he did not recall making the statements in the conference as testified by plaintiff because the conference with plaintiff was only one of several hundred personnel conferences in which he had engaged in the course of the past several years; but, “it is possible that we may have come to this understanding” (that upon verification of plaintiff’s prior Government employment ratings he was to be accorded the highest rate which he had previously held). Mr. Lamson added that under the practice and regulations at the *734 depot, “generally speaking” the highest previous rate is accorded upon reinstatement of a former Government employee “wherever possible;” but, that it is not “a mandatory thing.”
(d) On November 16,1956, plaintiff became reinstated at the depot as file clerk, Civil Service grade 2, step (a), at a salary of $2,960 per annum. Step (a) was the lowest step in grade 2 and was below the highest rate which plaintiff had previously held. The highest rate at which plaintiff could have been reinstated on the basis of the highest rate which he had previously held was grade 2, step (g), at a salary of $3,470 per annum.
(e) During or shortly after the aforementioned conference, Mr. Lamson made insertions in handwritten notations on the standard form 52, Request for Personnel Action, which he had received from the chief of the stock control division (finding 4(a), supra). These notations included plaintiff’s name, the nature of the action “Reinstatement (Career),” and the step and salary. Under item 20, Remarks, Mr. Lamson inserted “Substantially continuous creditable service from 1-27-42 to 9-13-46.” At approximately the same time there was filled out in the administrative branch of the depot, and approved by the chief of the branch, standard form 50, Notification of Personnel Action, on which was transposed from the form 52 pertinent information regarding plaintiff’s reinstatement. Under item 21, Remarks, the following was inserted: “This action is subject to all applicable laws, rules, and regulations and may be subject to investigation and approval by the United States Civil Service Commission. * * * Classification grade subject to post audit and correction. Substantially continuous creditable service from 1-27 — 42 to 9-13-46. Subject to Fegli. Category Q.”
.6. (a) Department of the Army Civilian Personnel Regulations, CPR P3 — Basic Pay Rates, published by the Department of the Army July 30,1956, and in effect on November 16, 1956, read in pertinent parts as follows:
COVERAGE
1-1. These regulations govern the fixing of rates of pay in connection with personnel actions for employees in either Classification Act or Wage Board positions. *735 Changes in rates of pay, as discussed herein, may be made only in conjunction with an official personnel action which places an employee in an established position, which changes his type of appointment, which effects a change from one established position to another, or which results from reclassification of his position. These regulations apply to positions in both the competitive and excepted services which are paid from appropriated funds. Supplemental instructions regarding the fixing of rates of pay upon return from military service are contained in CPE E6.
POLICY
1-2. Application of the general policy stated below to individual cases will be governed by the rules established for a specific type of action.
a. Preservation of Last Earned Bate. The policy is to preserve, to the maximum extent possible, an employee’s last earned rate of pay in the situations listed below.
(1) When a current employee of the Army Establishment is changed to another position without advancement in grade and the action is not the result of his request, failure to perform assigned duties, or disqualification.
(2) When a current employee of the Army Establishment is changed to lower grade as a result of reclassification of his position.
(3) When a former employee of the Army Establishment is reemployed through exercise of reemployment rights, through operation of the Area Placement Program or from reemployment priority lists.
(4) When employees are assigned between oversea commands or between oversea commands and continental United States installations.
b. Optional Fixing of Pay Not to Exceed Last Earned Bate. In the cases covered below the proposed rate must be appropriate for the employee’s known or presumed productive ability and equitable in terms of his experience as compared with that of other employees currently serving in similar positions.
(1) When a change in position is based on failure to perform assigned duties adequately and no advancement in grade during continuous service is involved, pay may be fixed at any scheduled step rate (other than the fourth Wage Board step rate) for the new position which is not m excess of the employee’s last earned rate.
(2) When a change in position is based on an employee’s application or request and no advancement in *736 grade during continuous service is involved, pay may be fixed at any scheduled step rate of the new position which is not in excess of the employee’s last earned rate, except where appointing officers elect to utilize the special provision of o below or paragraph 2-1&.

Optional Fixing of Pay Not To Exceed Highest Previous Bate

c. When necessary to obtain desired services or when otherwise determined to be in the best interests of the Army Establishment, appointing officers may fix the salary of an employee, who has previously served at a rate above his last earned rate, at any scheduled step rate of the position to which assigned which is not in excess of his highest previous rate (par. 1-4&). Generally, such higher former rate should have been received for a sufficient period of time, normally at least 90 days, to represent an actual earning level. Prior to utilizing such higher former rate, the appointing officer must make a determination that the employee’s qualifications and known or presumed proficiency justify the proposed rate. In addition, there must be a determination that such action would not serve to place the employee on a basis substantially different from other employees of equal or superior proficiency serving in similar or identical positions.
INFORMING EMPLOYEES
1-3. When, as provided in these regulations, an appointing officer has authority to fix a pay rate for a former or current employee at a rate less than either the last earned rate or the highest previous rate and when a lower rate is so established, the employee will be furnished a complete explanation of the reasons for the action.
DEFINITIONS
1-4. Application of the rules set forth in these regulations require uniform understanding of the terms used. The following definitions will be used in applying the rules set forth herein:

a. Current equivalent.

(1) For Classification Act positions, current equivalent is the statutory rate in effect at the time an action is taken for a grade and step applicable to a specific position.
*737 b. Highest previous rate is the current equivalent of the highest basic salary rate received in a former Classification Act or non-Classification Act position which exceeds the “last earned rate,” as defined in c below.

Conversions to Current Bates

o. When it becomes necessary to convert a former rate of pay to the current equivalent (par. 1-4a), the following rules will be observed:
* * * * *
(2) When the proposed position is in the Classification Act category and the former rate was earned in a non-Classification Act position, the former rate will be increased only by the amendments to the Classification Act pay schedules (app. B, CPR P8) which became effective during a period when the employee was not on the rolls of one of the offices listed in a above. In applying this rule to former Wage Board rates, it is necessary to convert the former hourly rate to a per annum rate and to find a comparable per annum rate on the Classification Act pay schedules in effect for the date under consideration, if the exact per annum rate does not appear on the Classification Act pay schedules for the specific date, the next lower Classification rate will be used. After the comparable (or next lower) Classification Act rate has been determined, it will then be increased by the amendments to the Classification Act pay schedules as provided above.
(5) Hourly rates will be multiplied by 2,080 and per diem rates by 260 and rounded to the nearest cent to derive the equivalent per annum rate.
EVIDENCE OS’ ELIGIBILITY FOR PAY ABOVE MINIMUM RATE
1-6. The specific rate of pay must be decided upon in each individual case, either by unconditional decision or by tentative decision, at the time the action is effected. If decision is made to afford an employee the benefit of a former rate of pay, but it is not possible to obtain verification of that rate prior to effecting the action, the action may be processed at the minimum step rate of the grade, subject to upward adjustment. In such cases, a statement to that effect must be recorded on the Standard Form 50 (Notification of Personnel Action) (table IV, CPR Rl). Observance of this procedure will provide a basis for *738 retroactive adjustment of the pay rate through issuance of a correction Standard Form 50 as provided in CPU Rl.2-4. Failure to place a qualifying statement on the Standard Form 50 effecting the original action will preclude adjustment until such time as another personnel action is effected, unless there is other antedated documentary evidence which shows the intent of the appointing officer to pay the higher rate to the individual employee concerned.
* * * * *
DURATION OP APPLICABILITY OP RATES ESTABLISHED
1-8. A rate once established continues until a new personnel action takes place (par. 1-1) or until it is changed by step increase action or by application of a new schedule of rates. At the time a new personnel action is effected there must be a new determination as to the rate which should be established.
(b) No explanation was furnished plaintiff in accordance with the above-quoted regulations, CPE P3,1-3 which provides that “when a lower rate is so established, the employee will be furnished a complete explanation of the reasons for the action.”
(c) No statement was recorded on the standard form 50 (finding 5 (e), supra) in accordance with the above-quoted regulations, CPE P3,1-6, to the effect that plaintiff was afforded the benefit of a former rate of pay, but that the action was processed at the minimum step rate of the grade, subject to upward adjustment; nor was any such statement recorded on the standard form 52 from which pertinent information was transposed to the standard form 50.
(d) Plaintiff was not aware of the contents of the foregoing regulations at the time of his aforementioned conference with Mr. Lamson.
7. Subsequent to plaintiff’s reinstatement, his records of past employment with the Government were received at the depot from the Army Records Center in St. Louis, Missouri, and were consolidated with plaintiff’s personnel records in the administrative branch at the depot. Plaintiff’s records of past employment were not brought to the attention of Mr. Lamson nor does it appear from the evidence that any *739 checking was made of these records by anyone to verify the highest rate which plaintiff had previously held.
8. (a) On November 30, 1956, by official personnel action, plaintiff was reassigned at the depot from his position as file clerk in the stock control division, outgoing property branch, requisition control section to the position of general clerk in the machine records branch of the same division. Plaintiff’s grade, step and salary remained the same, grade 2, step (a), at $2,960 per annum.
(b) Effective June 2, 1957, plaintiff was promoted from the above position of general clerk to the position of property and supply clerk of the stock analysis section of the stock management branch of the same division. His new rating was grade 3, step (a) at $3,175 per annum. At the time of his promotion, plaintiff made no complaint that he was not given the benefit of a former higher rate; nor was he at that time aware of the contents of the regulations quoted in finding 6 (a), supra.
(c) Effective June 1, 1958, plaintiff received a periodic step increase from step (a) to step (b) in grade 3 with an annual salary increase from $3,175 to $3,260. Pursuant to the Federal Employees Salary Increase Act of 1958, his salary was increased to $3,590 per annum.
(d) Effective July 27, 1958, plaintiff was promoted to stock control clerk of the requirements section of the stock management branch of the supply management division. His new rating was grade 5, step (a) at $4,040 per annum. At the time of his promotion, plaintiff made no complaint that he was not given the benefit of a former higher rate; nor was he at that time aware of the contents of the regulations quoted in finding 6(a), supra.
(e) Effective July 26, 1959, plaintiff received a periodic step increase to grade 5, step (b) at $4,190 per annum.
9. (a) In the fall of 1959, plaintiff was advised by a fellow employee that Army regulations “would allow * * * the benefit of a higher previously held rate” upon reinstatement of a Government employee. Plaintiff then went to the depot personnel office where he conferred with Miss Beulah Peters, employee utilization representative, who, according to plaintiff, examined plaintiff’s records and stated that an *740 error bad been made and that upon reinstatement plaintiff “should 'have received the top of the grade,” but that Mr. Lamson, the processing officer who was then on vacation, “would have to take care of it.”
(b) At the trial, Miss Peters testified that in the aforementioned conference she told plaintiff that under Army regulations plaintiff, upon reinstatement, might have been given the benefit of a former higher rate, and that Mr. Lam-son “may have forgotten to consider that former rate;” but, that she did not know whether in the conference she “used the terminology £an error’.” Miss Peters further testified that from the beginning of her employment at the depot in 1953 until 1956 she could recall “two or three” employees who were reinstated at the depot who were not afforded the highest rate which they had previously held. Creditable testimony was adduced at the trial to the effect that on occasions since the aforementioned conference Miss Peters stated that an administrative error had been made in plaintiff’s case.
(c) A few days after his conference with Miss Peters, plaintiff returned to the depot personnel office where he spoke with Mr. Lamson. Plaintiff testified: “Mr. Lamson told me that he was aware of the situation, that Miss Peters had brought it to his attention and he said he had a lot of research to do; there definitely was an error committed and I would get any amount that was due me, after computation and research, and I left them with that.”
(d) Plaintiff testified that at a Christmas party in 1959 Mr. Lamson told plaintiff that “the computation he had arrived at amounted to approximately $1,900 and that the matter was approved by the personnel office, submitted to the comptroller’s office, and it was just a matter of sitting back and waiting for correction, after the New Year’s holiday.” Thereafter, according to plaintiff, Mr. Lamson told him that “they had run into some technicalities,” and that the matter had to be referred to the chief signal office in Washington for concurrence.
10. (a) The body of a memorandum, dated January 26, 1960, to the chief signal officer, Department of the Army, Washington, D.C., from the commander of the depot, reads:
*741 1. Decision is requested as to the propriety of retroactive pay adjustment in the case of Mr. Baphael P. Bianco, an employee of this depot. The specific facts in this case are as follows:
a. Mr. Bianco was employed at the Borne Army Air Field, Borne, New York in ungraded positions at the rate of $2500 p.a. from 16 September 1943 to 27 January 1946. Applying the conversion rules as outlined in CPB P3.1-5c(2), this rate is the equivalent of the rate for GrS-5, step f, which is currently $4790 p.a.
b. On 16 November 1956, Mr. Bianco was reinstated with a career appointment at Tobyhanna Signal Depot as a File Clerk, GS-2, step a, at $2960 p.a. On the appointment SF 50, the statement relative to rate of pay being subject to adjustment upon verification of prior service was erroneously omitted. Based on his highest previous rate, his rate could have been set at step g, $3470 p.a.
c. On 2 June 1957, he was promoted to the position of Property and Supply Clerk, GS-3 and the rate of pay was established at step a, $3175 p.a.; however, based on his highest previous rate, his rate of pay could have been set at step g, $3685 p.a. Due to an oversight on the part of this office, he did not receive the benefit of the higher rate.
d. On 27 July 1958, he was promoted to the position of Stock Control Clerk, GS-5 and the rate of pay was established at step a, $4040 p.a. Based on his highest previous rate, his rate of pay could have been set at step f, $4790 p.a.
e. There is no written policy of this depot relative to establishing rates of pay; however, in accordance with the provisions of CPB P3.1, it has been the practice of this depot since its establishment to set the rate of pay in processing all actions at the maximum rate permissible under existing regulations.
f. In accordance with CPB P3.1-3, the employee should have been informed as to why he was not being given the benefit of his highest previous rate if such benefit was not to have been granted. Mr. Bianco was not furnished such a statement.
2. Based on the above facts and Mr. Bianco’s contention that he was advised verbally at the time of his appointment that his rate would be adjusted upon verification of prior service, a statement that cannot be verified or denied, it is recommended that this retroactive pay adjustment be approved.
*742 (b) A responding memorandum dated March 3, 1960, from the office of the chief signal officer reads in part:
its % % * #
b. In the absence of a qualifying statement on the Standard Form 50 or of any antedated documentary evidence showing the intent of the appointing officer to pay a higher rate than that established on the effective dates of the actions in question, retroactive adjustment may not be effected.
(c) After the above memorandum dated March 3, 1960, had been received at the depot, plaintiff sought an interview with the acting commanding officer of the depot. In the process of going through the channels of obtaining the interview plaintiff engaged in a conference attended by the chief of the division in which he was employed and by Mr. Lamson who, according to plaintiff, stated that the matter “couldn’t be adjusted until a new personnel action took place.” Plaintiff thereafter conferred with the acting commanding officer who stated in effect that it was the practice of the depot to accord the highest rate previously held by reinstated employees, and that he would look into the matter and resubmit plaintiff’s case to the Department of the Army.
11. (a) The body of a memorandum dated March 29,1960, to the chief signal officer from the commander of the depot reads:
1. Request clarification and reconsideration of 1st In-dorsement, 3 March 1960.
2. As stated in paragraph 1(e) of basic letter of 26 January 1960, it has been the policy of this depot since its establishment, to set the rate of pay in processing all actions at the maximum rate permissible under existing regulations and the maximum rate was not given in this case due to administrative error.
3. In accordance with 34 Comp. Gen. 380 and 32 Comp. Gen. 211 and cases therein, further consideration of this matter is requested.
4. In 32 Comp. Gen. 211, it was held, quoting from the syllabus, “In view of the reported administrative policy that present and former Federal employees appointed to positions with the Office of Price Stabilization should be given the highest salary rates previously received, the salary rates of employees appointed at the minimum rates of grades although higher rates had been received pre *743 viously by such employees may be corrected retroactively effective from the date of said appointment to the highest rate received previously, provided that rate does not exceed the maximum rate for the grade to which appointed, upon administrative determination of error in not carrying out said policy.”
5. In 24 Comp. Gen. 341, it was held, quoting from the syllabus, “Where there exists no administrative regulation, practice, or policy to deny, upon transfer of employees to other positions either in the same or different agency, the within-grade salary advancements previously attained under the act of August 1, 1941, an administrative error in transferring an employee at a salary rate which did not save such advancements to him may be corrected retroactively effective from the date of the transfer so as to save the lawful salary rate received prior to the transfer, provided there was no purpose to reduce the employee for any other reason. 21 Comp. Gen. 791, amplified.”
6. The employee concerned has asked that a ruling of the Comptroller General be requested in this matter.
(b) The language in the foregoing memorandum was transposed from a coordination sheet, circulated at the depot and initialed by six officers, including the legal officer and Mr. Lamson who processed plaintiff’s reinstatement.
12. By memorandum dated May 3,1960, to the commanding officer at the depot, the chief signal officer transmitted a memorandum dated April 28, 1960, from the deputy chief of staff for personnel, office of civilian personnel, the body of which reads:
1. In the absence of a written policy of the depot with respect to establishing rates of pay (par. le of attached letter from Tobyhanna Signal Depot, dated 26 January 1960), the administrative regulations of the Department in CPE. P3 are controlling. As provided therein, use of the highest previous rate rule is permissive, not mandatory. Further, it is a requirement of the Department’s regulations that the specific rate of pay be decided in each individual case at the time the action is effected. Thereafter, retroactive adjustment of pay cannot be effected unless there is a qualifying statement on the Standard Form 50 or other documentary evidence which shows the intent of the appointing officer to pay higher rate. In these respects the situation under consideration *744 differs from tlie cases considered in tbe Comptroller General’s decisions cited in attached correspondence.
2. In view of the foregoing, retroactive adjustment may not be authorized. If the employee so desires, he may file claim with the General Accounting Office, Washington 25, D.C. In preparing administrative report on any such claim however, the information contained in paragraph 1 above will be included.
■13. (a) On May 20, 1960, plaintiff wrote to the United States Civil Service Commission concerning retroactive adjustment in his pay rate.
(b) The body of a responding letter, dated June 8, 1960, from the chief of the employee rights and compensation section of the Commission reads:
This is in reply to your May 20 letter about adjusting your pay rate.
Where the agency fixes the employee’s rate, through administrative error, at the minimum of his Classification Act grade instead of at a higher rate based on his “highest previous rate,” his pay may be adjusted back to the date of the original pay action. But, where the employee’s pay was fixed at the minimum rate in accordance with the agency’s administrative regulations, it cannot be changed until some position change is made, at which time his salary could be fixed at a higher rate.
If it can be determined that an administrative error was made in your case, then corrective action may be made back to the date of the original pay action. This is something which you will have to settle within your agency. The Commission cannot act in this matter, since the final authority in deciding Federal pay matters is vested in the General Accounting Office. Should you desire to pursue the matter outside your agency, the Claims Division, General Accounting Office, Washington 25, D.C., would be the appropriate Federal office.
I am sorry that I cannot be of more help to you in this matter.
(c) Enclosed with the foregoing letter was the following:
UNITED STATES CIVIL SERVICE COMMISSION WASHINGTON 25, D.C.
GENERAL RULES FOR FIXING INITIAL SALARY RATES
Each department and agency in the Federal service has the primary responsibility for determining the salary *745 rates payable to its employees within the limit of available funds, and in accordance with applicable laws, regulations, and decisions of the Comptroller General of the United States. In fixing an employee’s initial salary rate, the general rule is that an employee who is reemployed, transferred, reassigned, promoted, repro-motea, or demoted, may, at the discretion of the agency, be paid at any scheduled rate in the grade which does not exceed his highest previous rate. This rule is generally applicable to all actions except on promotion and repro-motion between Classification Act grades when the agency must observe the basic mandatory requirement that an employee be given not less than a one-step increase of the grade from which he is promoted or re-promoted, wherever possible, or retain his existing rate if such rate is higher than the maximum scheduled rate of his new grade. It is a long established rule that an employee has the. right to retain a certain salary rate only so long as he remains in the same position.
The Commission’s General Compensation Rules also provide for the use of a longevity step which an employee had previously attained in the same or higher Classification Act grade when he is reemployed or transferred in the same or a lower grade, or reassigned, repro-moted or demoted. The employee may be given a comparable longevity step [in the same or a lower grade] when an agency applies this permissive rule.
After an employee’s salary is initially established, any adjustment due to error must be made by authorized officials of the department concerned. Such adjustment must be based upon a positive showing that an administrative error was in fact made by the agency in taking the original pay action which is in question and that the readjustment is not contrary to the department’s regulations or policy.
14. (a) Effective July 10, 1960, pursuant to the Federal Employees Salary Increase Act of I960, plaintiff’s salary was increased from $4,190 to $4,510 per annum.
(b) Effective July 24, 1960, plaintiff received a periodic step increase from step (b) to step (c) in grade 5, with an annual salary of $4,675.
15. (a) In the fall of 1960, plaintiff submitted a claim to the General Accounting Office for retroactive adjustment of his salary.
*746 (b) The body of a letter, dated November 1, 1960, in response to plaintiff’s foregoing claim, from the Comptroller General reads:
Yonr claim for retroactive adjustment of salary as an employee of the Tobyhanna Signal Depot, Tobyhanna, Pennsylvania, by reason of prior service at a higher grade performed at the Rome Air Depot, Rome, New York, is disallowed for the reasons stated below.
The record discloses that you received a probational appointment on January 27, 1942, and held various ungraded positions, until January 27,1946, when you were converted from Millwright, ungraded, $2500 p.a., to Carpenter, Grade 12, Step 6, $1.20 per hour (day), $1.25 per hour (night). You resigned while serving as a Carpenter grade 12, Step 5, $1.20 per hour, on September 13, 1946 (due to an imminent reclassification and cut in salary). On November 16, 1956 you were reinstated as a File Clerk (Career), GS-2(a) at $2960 p.a. at the Tobyhanna Signal Depot and you were given promotions on June 2,1957 and July 27,1958.
You contend that had your prior service record been considered and salary conversion rules employed, you would have been reinstated as a GS-2 (g), instead of the step received. Also, that you were advised at the time that an adjustment would be made upon receipt of prior service and justification therefor.
The regulations effective upon the date of your reinstatement CPR P3.1-6, required that if a decision was made by the appointing official to afford an employee a rate above the minimum step in the grade based upon a higher rate received for a period of former employment but verification of the former rate could not be made, a statement to that effect must be included on the employee’s Standard Form 50 or other antedated documentary evidence furnished to show such intention. Under the regulations then in effect failure, as here, to include a qualifying statement or other satisfactory evidence explaining the absence of a qualifying statement on Form 50 precludes a retroactive adjustment of the rate prescribed in the original appointment action. Rate adjustments may however, be made effective with subsequent personnel actions.
Regardless of evidence that the established unwritten policy of the depot was to process all actions at the maximum rate permissible under the regulations, the complete absence of any evidence of intent to fix rates other than those appearing on the Form 50 negates the idea of *747 administrative error or a contrary intent by the administrative official to consider the employee’s former higher salary rate.
16. (a) On November 17, 1960, the director of employee relations, American Federation of Government Employees, requested in plaintiff’s behalf, reconsideration of his claim by the General Accounting Office.
(b) The body of a letter dated January 26,1961, from the Assistant Comptroller General in response to the foregoing request reads:
On November 17, 1960, Mr. H. Y. Prater, Director, Employee Relations, American Federation of Government Employees, requested, in your behalf, reconsideration of our settlement of November 1, 1960, which disallowed your claim for retroactive upward adjustment of salary as an employee of the Department of the Army.
The record shows you formerly were employed at the Rome Army Air Field, Rome, New York, and you resigned from your position as carpenter, grade 12, step 6, $1.20 per hour on September 13,1946, because of an imminent reclassification and reduction in compensation at that installation. You were reinstated at the Tobyhanna Signal Depot, Tobyhanna, Pennsylvania, on November 16, 19S6, as a file clerk, GS-2, at the minimum step of that grade. The compensation rate you received upon your reinstatement was below your previous highest rate received in grade WB-12, step 6, and you say you were verbally advised at the time of your appointment that an adjustment of your compensation rate would be considered upon receipt and verification of a record of your prior service to justify such action.
Civilian Personnel Regulations CPR P3.1-6, in effect at the time of your reinstatement reads as follows:
“The specific rate of pay must be decided upon in each individual case, either by unconditional decision or by tentative decision, at the time the action is effected. If decision is made to afford an employee the benefit of a former rate of pay, but it is not possible to obtain verification of that rate prior to effecting the action, the action may be processed at the minimum step rate of the grade, subject to upward adjustment. In such cases, a statement to that effect must be recorded on the Standard Form 50 (Notification of Personnel Action) (table IY, CPR Rl). Observance of this procedure will provide a *748 basis for retroactive adjustment of the pay rate through issuance of a correction Standard Form 50 as provided in CPB Bl.2-4. Failure to place a qualifying statement on the Standard Form 50 effecting the original action will preclude adjustment until such time as another personnel action is effected, unless there is other antedated documentary evidence which shows the intent of the appointing officer to pay the higher rate to the individual employee concerned.” (Underscoring supplied.)
The record shows no qualifying statement as required by CPB P3.1-6 was included on your Standard Form 50 by the appointing official to afford you a basis for retroactive adjustment of your pay rate through issuance of a correction Form 50 as provided by CPB Bl.2-4 to a rate above that fixed at the time of your reinstatement; neither is there other antedated documentary evidence to show an intention to adjust the compensation rate fixed at the time of the original appointment action upon verification of a former higher rate received by you in the Government service.
The record further shows you received promotions on June 2, 1957, and July 27, 1958. Although under the above-quoted regulations consideration could have been given to increasing your salary rate, prospectively, at those times there is no evidence to show that you questioned the rates fixed at the times of your promotions or that any timely administrative consideration was given to fixing rates other than those formally prescribed.
Although the letter of January 26,1960, from the Executive officer of the depot to the Chief Signal officer referred to in letter of November 17,1960, received in your behalf from Mr. Prater, says the statement relating to a subsequent adjustment of compensation upon verification of your prior salary rates was erroneously omitted from Form 50 by the personnel office, that officer also says your contention that you were advised verbally at that time that an adjustment would be made upon receipt of the record cannot be verified or denied.
In the circumstances, there is no authority under the regulation cited to retroactively adjust your salary rate at this time.
Therefore, the disallowance of your claim for additional compensation was proper, and, upon review, the settlement is sustained.
17. (a) On February 27, 1961, Mr. Louis J. DePaul, the then chief of the supply management division in which plain *749 tiff was employed signed a Request for Personnel Action form for reassignment of plaintiff from the position of stock control clerk in the requirements section of the stock management branch of the division to the position of stock control clerk in the excess property section of the same branch. The request was made “for the purpose of cross-training on a voluntary basis” and was consented to by plaintiff. Concurrently Mr. DePaul requested reassignment, also for cross-training purposes, of Mr. Joseph Sallurday from his position of stock control clerk in the excess property section of the branch to the position of stock control clerk in the requirements section of the branch.
(b) At the time of the foregoing requests for reassignment, plaintiff was in grade 5, step (c) at an annual salary of $4,675, and Mr. Sallurday was in grade 5, step (d) at an annual salary of $4,840.
(c) Effective March 5, 1961, plaintiff was reassigned to the position formerly held by Mr. Sallurday who was simultaneously reassigned to the position formerly held by plaintiff. Mr. Sallurday’s status and salary were not affected by the reassignment; but, plaintiff’s status was increased to step (f) of grade 5 at an annual salary of $5,170.
(d) The reassignments were made solely for the purpose of cross-training in accordance with the depot personnel policies and were not motivated by anything which happened at the time plaintiff was reinstated in 1956.
18. (a) Department of the Army Civilian Personnel Regulations (CPR P3 — Basic Pay Rates) in effect at the time of the reassignments provide in pertinent parts:

Highest Previous Rate

5. Highest previous rate is the current equivalent of the highest basic salary rate received in a former Classification Act or non-Classification Act position (par. 1-5 below) which exceeds the “last earned rate,” as defined in o below. When the highest rate previously received falls between two scheduled rates of the new grade, either the higher or the lower of the two rates may be considered as the highest previous rate at the discretion of the appointing officer.

*750
Conversions to Cwrrent Bates

e. When it becomes necessary to convert a former rate of pay to the current equivalent (par. 1-4a), the following rules will be observed:
*****
(2) When the proposed position is in the Classification Act category and the former rate was earned in a non-Classification Act position, the former rate will be converted to the equivalent per annum rate under the Classification Act pay schedules in effect at the time of such service (app. B, CPE P8). Where there is no equivalent per annum rate on the Classification Act pay schedules, the non-Classification Act per annum rate will be converted to the next higher Classification Act rate. Where the rate thus determined falls within two or more grades under the Classification Act, the rate in the grade which gives the employee the maximum benefit will be used. After the comparable (or next higher Classification Act rate) has been determined, it will then be increased to its current Classification Act rate.
* Hi * # *
(5) Hourly rates will be multiplied by 2,080 and per diem rates by 260 and rounded to the next higher cent to derive the equivalent per annum rate.
* # # # *
DURATION OP ESTABLISHED RATES
1-8. A rate once established continues until a new personnel action takes place (par. 1-1) or until it is changed by step increase action, by application of a new schedule of rates, by termination of a salary retention period, or by application of advanced in-hiring rates or increased minimum rates. At the time a new personnel action is effected there must be a new determination as to the rate which should be established. Change action may not be effected solely for the purpose of affording an employee the benefit of a highest previous rate as defined in paragraph 1-45. See 36 Comp. Gen. 798.
(b) In the course of processing the reassignments a determination was made in the personnel office and approved by Mr. Lamson, who was then chief of the employment services branch, to afford plaintiff the benefit of his highest previous rate as defined in the foregoing regulations. This determina *751 tion was not motivated by anything which happened at the time plaintiff was reinstated in 1956, nor was it made to correct an error in any previous personnel action.
(c) The salary of $2,500 per annum (Wage Board), earned by plaintiff in 1944 and 1945, was his highest previous rate as defined in the foregoing regulations. In the process of converting that (Wage Board) rate to its then “current equivalent” (Classified Rate), Mr. Lamson made an administrative error in according plaintiff step (f) in grade 5 at an annual salary of $5,170. Under the conversion the maximum allowable rate to plaintiff was grade 5, step (c) at an annual salary of $4,675.
19. Effective March 4,1962, plaintiff was given a periodic step increase to step (g) of grade 5 at an annual salary of $5,335. This action was erroneous since plaintiff had been placed in step (f) on March 5, 1961, by an administrative error (finding 18 (c), supra) and, accordingly, he was not eligible for the periodic step increase to step (g).
20. (a) Had it not been for the administrative error which was made at the time of the March 5, 1961, reassignments, (finding 18 (c),supra) plaintiff would have been eligible on July 23,1961, for a periodic step increase within grade 5 from step (c) at $4,675 per annum to step (d) at $4,840 per annum; and on July 22, 1962, plaintiff would have been eligible for a periodic step increase, within grade 5, to step (e) at $5,005 per annum.
(b) On July 22, 1963, after discovery of the administrative error, personnel action was taken to correct plaintiff’s salary retroactively to March 5, 1961, at $4,675 per annum. On the same date, payroll change slips were issued to accord plaintiff the periodic step increases for which he would have been eligible if there had been no administrative error. Plaintiff was accordingly given a rating of step (d) in Grade 5 at $4,840 per annum as of July 23, 1961 and step (e) in Grade 5 at $5,005 per annum as of July 22,1962.
(c) In its counterclaim, defendant seeks to recover the difference between the amount of salary which plaintiff would have received for the period beginning March 5, 1961, until July 22, 1963, if there had been no administrative error, and the amount which plaintiff did receive during this period.
*752 21. It is found from the entire record in tlie case that at the time of plaintiff’s reinstatement on November 16,1956, it was understood by the parties that defendant would accord plaintiff the highest rate which plaintiff had previously held, and that but for administrative error plaintiff would have been accorded such rate retroactively to the date of his reinstatement upon confirmation of his records of past employment.
Conclusions op Law
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover on his claim and that defendant is entitled to recover on its counterclaim, and judgment is entered to that effect, with the determination of the amounts of recovery to be reserved for further proceedings under Eule 47(c).
In accordance with the opinion of the court and a memorandum report of the commissioner as to the amount due thereunder, it was ordered on January 17, 1966, that judgment be entered for the plaintiff in the total amount of $1,249.10, including payments to plaintiff’s retirement and insurance funds, and in favor of defendant, and against plaintiff, in the sum of $237.48, or a net amount due plaintiff of $1,011.62, with the provision that the sum of $60.71 bo paid from the judgment to plaintiff’s Civil Service Eetirement fund and that the sum of $2.00 be paid from the judgment to plaintiff’s Federal Employees Group Life Insurance Fund.